Elizabeth Joan GRIFFIN, Plaintiff,

v.

GREEN TREE SERVICING, LLC, a Delaware limited liability company; Northwest Trustee Services, Inc., a Washington corporation; Bank of America, National Association, a National Banking Association; Bank of America Corporation, a Delaware corporation; and Does 1-100, inclusive, Defendants.

CASE NO. CV 14–09408 MMM (VBKx)

United States District Court, C.D. California.

Signed April 9, 2015

Mark T. Young, Donahoe and Young LLP, Valencia, CA, Bernard R. Schwam, Bernard R. Schwam Law Offices, Encino, CA, Joseph Richard Manning, Jr., Law Offices of Joseph R. Manning Jr. APC, Newport Beach, CA, for Plaintiff.

Yaron Shaham, Severson and Werson, Irvine, CA, Adam F. Summerfield, McGuireWoods LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

### MARGARET M. MORROW, UNITED STATES DISTRICT JUDGE

On October 31, 2014, Elizabeth Joan Griffin filed this action against Green Tree Servicing, LLC ("Green Tree"), Northwest Trustee Services, Inc. ("Northwest"), Bank of America, N.A. ("BANA"), Bank of America Corporation ("BAC") (collectively, "BofA"), and certain fictitious defendants in the Los Angeles Superior Court.[1] The complaint alleges causes of action for promissory estoppel; breach of the implied covenant of good faith and fair dealing; negligence; violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*; specific performance; fraud; negligent misrepresentation; and declaratory relief.[2]

On December 16, 2014, Green Tree filed a motion to dismiss.[3] On January 8, 2015, BANA and BAC filed a motion to dismiss.[4] Griffin opposes both motions.[5] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7–15, the court finds this matter appropriate for decision without oral argument; the hearing calendared for April 13, 2015, is therefore vacated, and the matter taken off calendar.

## I. FACTUAL BACKGROUND

Griffin alleges that she is the owner of certain real property located at 19652 Chadway Street, Canyon Country, California 91351.[6] Griffin purchased the property in 1990. She asserts that in 2007, she owed $152,165.35 on her mortgage on the property, and that her monthly payment was $895.95.[7] In mid–2007, "Countrywide Home Loans" purportedly contacted her, and encouraged her to refinance the property because "this would undoubtedly be the last time she would be able to take advantage of the low interest and high interest loan rates available."[8] Griffin decided to apply for a new loan, and her application was approved.[9] On September 12, 2007, Griffin obtained a mortgage, secured by a deed of trust on the property, in the amount of $384,000 from Countrywide Bank, FSB.[10]

After refinancing, Griffin experienced economic hardship; her salary was reduced by $2.00 per hour, the value of her stock portfolio was significantly affected by market crashes, and her lines of credit were canceled.[11] Griffin was thus forced to deplete her savings to make her mortgage payments.[12]

In August 2009, Griffin submitted a loan modification application to BAC, Countrywide's successor in interest.[13] She con-

---

1. Notice of Removal ("Removal"), Exh. A, Complaint., ·Docket No. 1 (Dec. 5, 2014), ¶ 1.

2. *Id.*, ¶¶ 38–85.

3. Green Tree's Notice of Motion and Motion to Dismiss Case ("Green Tree Motion"), Docket No. 13 (Dec. 16, 2014).

4. BofA's Notice of Motion and Motion to Dismiss Case ("BofA Motion"), Docket No. 16 (Jan. 8, 2015).

5. Opposition to BofA's Motion to Dismiss ("BofA Opposition"), Docket No. 18 (Jan. 12, 2015); Opposition to Green Tree's Motion to Dismiss ("Green Tree Opposition"), Docket No. 25 (Mar. 23, 2015).

6. Complaint, ¶ 2, 9.

7. *Id.*, ¶ 10.

8. *Id.*, ¶ 11.

9. *Id.*, ¶ 12.

10. *Id.*, Exh. 1 (Deed of Trust at 1–2).

11. *Id.*, ¶ 13.

12. *Id.*

13. *Id.*, ¶ 14.

tends that on December 5, 2009, a BANA representative named Marion told her that her loan modification application had been approved.[14] Under the loan modification, instead of a monthly payment of $3,074.38, Griffin's new payments were to be $1,841.47 per month.[15] The agreement allegedly provided that, if Griffin made "three (3) payments of $1,841.47 on December 10, 2009, January 10 and February 10, 2010," her monthly mortgage payment would be permanently modified and become $1,841.47.[16] Griffin contends that she was given confirmation number 9467603,[17] and that Marion "represented that she would send [Griffin] the modification agreement no later than December 29, 2009."[18]

Griffin asserts she never received the modification agreement,[19] despite the fact that she made the three trial payments.[20]

In March 2010, Griffin contacted BAC.[21] Only then did she learn that the payments she had been making—per her verbal agreement with Marion—were considered "partial payments."[22] Griffin asserts she was then told that the payments were "prohibited under the terms of her mortgage[ ] and would not be accepted."[23] She also contends she was told that "BAC considered her to be delinquent, and that collection activities were going to [b]e commenced."[24] Griffin alleges that the three payments she made were neither credited to her account nor refunded.[25]

More than one year later, on June 7, 2011, Griffin purportedly received a notice of trustee's sale from ReconTrust Company as trustee for BAC,[26] stating that the property would be sold at a trustee's sale on July 6, 2011.[27] Before receiving the June 7, 2011 notice, Griffin allegedly had not received a notice of default, as required by California Civil Code § 2924.[28] Griffin also contends that BAC did not attempt to contact her to work out a foreclosure prevention alternative in violation of California Civil Code § 2923.5. Finally, she asserts that the notice of trustee's sale failed to reflect the three payments she made in December 2009 and January and February 2010.[29]

On May 11, 2013, BAC purportedly informed Griffin that servicing of her mortgage loan would be transferred to Green Tree effective June 1, 2013.[30] As the servicer, Green Tree was responsible for "billing, payment, processing and customer support" on the loan.[31] Before receiving

14. *Id.,* ¶ 15.

15. *Id.*

16. *Id.,* ¶ 16.

17. *Id.*

18. *Id.*

19. *Id.,* ¶ 17.

20. *Id.*

21. *Id.,* ¶ 18.

22. *Id.*

23. *Id.*

24. *Id.*

25. *Id.,* ¶ 19.

26. *Id.,* ¶ 20.

27. *Id.*

28. *Id.*

29. *Id.,* ¶¶ 20–22. Griffin alleges that her home was ultimately sold at foreclosure. (*Id.,* ¶ 20.) That remainder of the complaint, however, suggests that she is still in possession of the property. Moreover, her counsel represented at a scheduling conference held on March 23, 2015, that Griffin was still living in the home. (See Minutes of Scheduling Conference, Docket No. 24 (Mar. 23, 2015).)

30. *Id.,* ¶ 24.

31. *Id.*

this notice, Griffin asserts that she did not know Green Tree had assumed servicing responsibility for the loan; in fact, she believed BAC was still considering her loan modification request, which it was allegedly "required to do pursuant to new Federal laws and regulations."[32] Griffin also contends she entered into a contract with BAC, pursuant to which she agreed to dismiss an earlier lawsuit breach of contract and violation of other state laws in exchange for BAC's rescission of the foreclosure sale and continued consideration of her loan modification application.[33]

In June 2013, Griffin allegedly received a telephone call from a woman who purportedly worked for Green Tree, and asked to discuss Griffin's loan.[34] Griffin informed the individual that she had retained counsel and asked that Green Tree contact him.[35] When the employee refused to do so, Griffin asked to speak with a supervisor; Griffin repeated her request, and the supervisor purportedly hung up on her.[36] Griffin had no further communication with Green Tree until more than one year later, on July 14, 2014, when she received a notice of default and election to sell under deed of trust,[37] which stated that Green Tree would foreclose on Griffin's property unless she paid the full balance of the loan—$533,541.50.[38] Griffin contends the notice violates California Civil Code § 2923.5.[39]

Griffin asserts that BAC has attempted since 2011 to offer her a permanent loan modification; she contends that "part of the dispute with Green Tree is that certain

personnel at Green Tree contend that [she] does not have a pending loan modification."[40]

## II. DISCUSSION

### A. Defendants' Requests for Judicial Notice

 Because Rule 12(b)(6) review is confined to the complaint, the court typically does not consider material outside the pleadings (e.g., facts presented in briefs, affidavits, or discovery materials) when deciding such a motion. *In re American Continental Corp./Lincoln Sav. & Loan Securities Litig.*, 102 F.3d 1524, 1537 (9th Cir.1996). It may, however, properly consider exhibits attached to the complaint and documents whose contents are alleged in the complaint but not attached, if their authenticity is not questioned. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001).

 In addition, the court can consider matters that are proper subjects of judicial notice under Rule 201 of the Federal Rules of Evidence. *Id.* at 688–89; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ("[C]ourts must consider the complaint in its entirety,

---

**32.** *Id.,* ¶ 25. Griffin asserts that the Federal Home Affordable Modification Program ("HAMP") compelled BAC to "continuously ... renew[ ] its efforts to offer a permanent loan modification to [her]." (*Id.,* ¶ 30.)

**33.** *Id.,* ¶ 26.

**34.** *Id.,* ¶ 27.

**35.** *Id.*

**36.** *Id.*

**37.** *Id.*

**38.** *Id.,* ¶ 28.

**39.** *Id.*

**40.** *Id.*

as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").[41] The court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or proper subjects of judicial notice. *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998); see also *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

### 1. Green Tree's Request for Judicial Notice

■ Green Tree asks that the court take judicial notice of Exhibits A through G to its request for judicial notice, all of which are documents that concern the chain of title on Griffin's mortgage. The documents include an October 3, 2007 deed of trust;[42] two assignments of deed of trust dated June 8, 2011 and July 5, 2011; a corrective assignment of deed of trust dated June 10, 2014; a notice of substitution of trustee dated June 26, 2014; a notice of default dated July 14, 2014; and a notice of trustee's sale dated October 17, 2014.[43] All of these documents were recorded in the Los Angeles County Recorders Office, and each has a document number and filing stamp.[44] The documents bear directly on Griffin's allegations and claims. Other courts have taken judicial notice of such documents as public filings. See *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057–58 (C.D.Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL 1980860, *2 (N.D.Cal. June 1, 2012) (public records are judicially noticeable under Rule 201); *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D.Cal.2010) (noting that a "[party] provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09–CV–0886–IEG (POR), 2009 WL 4163332, *3 (S.D.Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09–CV–877–AWI–SMS, 2009 WL 3427179, *3 n. 3 (E.D.Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record. As such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09–02086 SI, 2009 WL 3429700, *2 (N.D.Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice). Accordingly, the court grants Green Tree's request for judicial notice.

---

**41.** Taking judicial notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment. *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986).

**42.** The deed of trust is also referenced in and appended to the complaint, and can be considered under the doctrine of incorporation by reference as a result. See *Lee*, 250 F.3d at 688.

**43.** Green Tree's Request for Judicial Notice ("Green Tree RJN"), Docket No. 14 (Dec. 16, 2014) at 2–3.

**44.** Id. Exhs. A–G.

## 2. BofA's Request for Judicial Notice

█ BofA asks that the court take judicial notice of five exhibits.[45] The first four exhibits are identical to exhibits for which Green Tree sought judicial notice; accordingly, the court grants BofA's request as to these documents. Exhibit E is a printout from the Federal Deposit Insurance Corporation's website dated December 9, 2014. Courts routinely consider such documents because they reflect official acts of the executive branch of the United States. See *Preciado v. Wells Fargo Home Mortgage*, No. CV13–00382 LB, 2013 WL 1899929, *3 (N.D.Cal. May 7, 2013) (taking judicial notice of similar documents because the "documents reflect[ed] the official acts of the executive branch of the United States"); *Hague v. Wells Fargo Bank, N.A.*, C11–02366 THE, 2011 WL 3360026, *1 n. 2 (N.D.Cal. Aug. 2, 2011) (same). It is thus appropriate to take judicial notice of Exhibit E, because it is information obtained from a government website. See *Cachil Dehe Band of Wintun Indians of the Colusa Indian Comm'ty v. California*, 547 F.3d 962, 968–69 n. 4 (9th Cir.2008) (taking judicial notice of gaming compacts posted on the official California Gambling Control Commission website); *Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir.2002) (taking judicial notice of information on the FDIC's website); *Curcio v. Wachovia Mortgage Corp.*, No. 09–CV–1498–IEG (NLS), 2009 WL 3320499, *4 (S.D.Cal. Oct. 14, 2009) (taking judicial notice of two printouts from the FDIC's website). The court therefore grants BofA's request for judicial notice in full.

## B. Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)

█ A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir.1995).

█ The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Thus, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); see also *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir.2009)

**45.** BofA's Request for Judicial Notice ("BofA RJN"), Docket No. 17 (Jan. 8, 2015) at 1–3.

("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly* ).

### C. Whether Griffin's Claims Against BofA Are Preempted by the Home Owner's Loan Act ("HOLA")

■ BofA contends that many of Griffin's claims are preempted by HOLA and must therefore be dismissed. See 12 U.S.C. § 1461 *et seq.*[46] "HOLA was enacted in 1933 as a result of congressional dissatisfaction with state law and practice in financing home construction." *Spears v. Washington Mutual, Inc.*, No. C–08–00868 RMW, 2009 WL 605835, *5 (N.D.Cal. Mar. 9, 2009) (citing *Conference of Federal Savings and Loan Associations v. Stein*, 604 F.2d 1256, 1257–58 (9th Cir.1979), and *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir.2008)). The statute grants the Office of Thrift Supervision ("OTS") "broad regulatory authority over thrift institutions." *Id.*

Pursuant to HOLA, OTS has promulgated a regulation that explicitly occupies the field of lending regulation for federal savings associations. *Id.* This provision, 12 C.F.R. § 560.2, states in pertinent part:

> "To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation." 12 C.F.R. § 560.2(a).

12 C.F.R. § 560.2(b) details thirteen types of laws that states are preempted from enacting, including laws governing loan-related fees; disclosure and advertising; escrow accounts; processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages; disbursements and repayments; and access to and use of credit reports.

■ Federal savings associations, including federal savings banks, are subject to HOLA and are regulated by the OTS. 12 U.S.C. § 1464; *Silvas*, 514 F.3d at 1005. In contrast, federally chartered banks are subject to regulation by the Office of the Comptroller of the Currency under the National Banking Act. See *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 561–62 (9th Cir.2002).

Some district courts in California have held that HOLA preemption applies to claims asserted against a national bank that acquired a loan originated by a federal savings association, even if the claims concern conduct that occurred after the bank's acquisition of the loan. See, e.g., *Haggarty v. Wells Fargo Bank, N.A.*, No. C 10–02416 CRB, 2011 WL 445183, *4 (N.D.Cal. Feb. 2, 2011) ( "It appears that HOLA does apply because Plaintiffs' loan originator was a federal savings bank.... This is true even though the conduct at issue occurred after Wells Fargo merged with Wachovia"); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F.Supp.2d 1119, 1126 (N.D.Cal.2010) ("Wells Fargo notes that at the time the loan was made to the DeLeons, 'World Savings Bank, FSB was a federally chartered savings bank organized and operating under HOLA' and observes correctly that the same preemption analysis would apply to any alleged conduct after November 1, 2009, when the lender merged into a national banking association").

**46.** Opposition at 4.

Indeed, some courts have held that HOLA preemption applies without even discussing the timing of the conduct underlying the claims. See *Appling v. Wachovia Mortgage, FSB*, 745 F.Supp.2d 961, 970–71 (N.D.Cal.2010) ("[A]lthough Wells Fargo itself is not subject to HOLA and OTS regulations, this action is nonetheless governed by HOLA because Plaintiff's loan originated with a federal savings bank and was therefore subject to the requirements set forth in HOLA and OTS regulations," citing *Lopez v. Wachovia Mortg.*, No. C 10–01645 WHA, 2010 WL 2836823, *2 (N.D.Cal. July 19, 2010) (finding, although *Wells Fargo* was a federally chartered national bank, that HOLA governed because the loan originated with World Savings Bank, which was regulated by OTS and subject to HOLA)).

Still other courts have suggested that HOLA preemption should be limited to claims based on conduct that took place while the entity holding the loan was covered by HOLA. See, e.g., *Castillo v. Wachovia Mortg'g*, No. C–12–0101 EMC, 2012 WL 1213296, *5 (N.D.Cal. Apr. 11, 2012) ("While Plaintiff's claims are not entirely clear, it is possible that some of her allegations concern conduct by Wells Fargo that took place after Wells Fargo merged with WSB (named Wachovia at the time of the merger). For example, Defendants issued Plaintiff's Notice of Default and conducted the foreclosure sale post-merger. Thus, if any of Defendants' allegedly wrongful transfers of the Note or Deed to MERS, separation of the Note from the Deed, or other wrongful conduct that deprived Defendants of the authority to foreclose occurred post-merger, Plaintiff may have an argument that HOLA preemption would not be applicable," citing *Stalnaker v. Fidelity & Deposit Co.*, No. 2:10–cv–00964, 2011 WL 560675, *3 (S.D.W.Va. Feb. 8, 2011) (stating that "Ocwen has cited no authority for, and the case law does not support an assertion that a successor in interest to a federal savings bank is subject to HOLA preemption for activities that took place after the federal savings bank dissolved")); *Rodriguez v. U.S. Bank Nat'l Ass'n*, No. C 12–00989 WHA, 2012 WL 1996929, *7 (N.D.Cal. June 4, 2012) ("[I]t is ... unclear whether HOLA preemption applies to U.S. Bank. Although the loan originated with Downey Savings, a federally-chartered savings association ..., U.S. Bank is a federally chartered national bank governed by the National Bank Act. This Court has taken the position that whether HOLA governs the action depends on when the alleged conduct occurred ..."); *Ramirez v. Wells Fargo Bank, N.A.*, No. C 10–05874 WHA, 2011 WL 1585075, *7 (N.D.Cal. Apr. 27, 2011) ("Wells Fargo allegedly promised to postpone the foreclosure sale in August 2010, which was after the merger took place in November 2009. Consequently, because Wells Fargo is a federally chartered national bank, the National Bank Act governs preemption as to the fifth and sixth claims. This order declines to find that the fifth and sixth claims are preempted [by HOLA] at this time"); *Valtierra v. Wells Fargo Bank, N.A.*, No. CIV–F–10–0849 AWI, 2011 WL 590596, *4 (E.D.Cal. Feb. 10, 2011) ("In this case, all occurrences surrounding the original procurement of the mortgage appears to be covered by HOLA. Causes of action arising on or after November 1, 2009 (date of conversion to national bank) will not be preempted given the facts as they stand at this stage of litigation. Plaintiff alleges that Wells Fargo sent him a letter outlining a short sale program that would have avoided foreclosure and then foreclosed in violation of the program's terms. There is no indication when the letter was sent and/or discussions about the short sale program took place. Thus, the court cannot assume that these acts would be subject to HOLA preemption at this point").

Finally, some courts have suggested that HOLA preemption may not apply to claims asserted against a national banking association at all. See *Albizo v. Wachovia Mortg'g*, No. 2:11–cv–02991 KJN, 2012 WL 1413996, *16 (E.D.Cal. Apr. 20, 2012) (rejecting an argument that HOLA preemption "sticks" to the loan as it passes to successor entities), citing *Gerber v. Wells Fargo Bank, N.A.*, No. CV 11–01083–PHX–NVW, 2012 WL 413997, *4 (D.Ariz. Feb. 9, 2012) ("HOLA preempts 'state laws affecting the operations of federal savings associations' and leaves room for state laws that 'only incidentally affect the lending operations of Federal savings associations.' Application of the Consumer Fraud Act to Wells Fargo would not affect the 'operations' of a federal savings association—and especially not the 'lending operations'—because Wells Fargo is not a federal savings association").

 The court finds the second approach the most nuanced and persuasive. It is clear from the language of § 560.2 that the regulation is intended to preempt state laws that govern the conduct of federal savings associations. Section 560.2 does not "occupy the field" with respect to national banks like BofA, and claims based on BofA's post-merger conduct pertain only to the conduct of a national bank. Claims based on pre-merger conduct, by contrast, concern the conduct of Countrywide Bank, FSB, which was a federal savings entity governed by HOLA and § 560.2. Accordingly, the court must examine each of Griffin's claims to determine whether they involve pre- or post-merger conduct.

Having done so, the court concludes that none of Griffin's claims pertains to pre-merger conduct. The complaint alleges that Countrywide was the originator of Griffin's mortgage; none of the allegedly wrongful conduct is attributed to it. HOLA. therefore, does not preempt the claims. BofA's motion to dismiss on the basis of HOLA preemption is therefore denied.

### D. Whether the Court Should Dismiss Griffin's Promissory Estoppel Claim

 Under California law, the elements of a claim for promissory estoppel are: " '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [that is] both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.' " *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07–02864 JSW, 2007 WL 3232276, *6 (N.D.Cal. Nov. 1, 2007) (quoting *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App.3d 885, 890, 131 Cal.Rptr. 836 (1976)). A promise "that is vague, general or of indeterminate application is not enforceable." To be enforceable, the promise must be sufficiently definite that " 'a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.' " *Id.* (quoting *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 446 (9th Cir.1992); *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1017 (9th Cir.2003)).

 Green Tree contends the promissory estoppel claim must be dismissed because the complaint does not allege that Green Tree made any promise to Griffin.[47] The court agrees. Although the complaint asserts that BAC promised Griffin a loan modification, the promise was not made by Green Tree, but rather by BAC on December 5, 2009—more than

---

47. Green Tree Motion at 3–4.

three years before Green Tree was substituted as trustee. Griffin's promissory estoppel claim against Green Tree is thus deficient and must be dismissed.[48]

■ With respect to the claim against BofA, Griffin alleges that on December 5, 2009, she and BANA verbally agreed to a modification of the loan that would reduce her payments to $1,841.40 for the life of the loan.[49] Griffin contends she relied on this promise by making three monthly payments of $1,841.40 in a timely manner.[50] BANA and BAC concede that, to the extent Griffin's promissory estoppel

**48.** Green Tree also contends that any agreement to modify the mortgage or deed of trust would be subject to the statute of frauds, and hence barred. (Green Tree Motion at 4–5.) "A mortgage or deed of trust [ ] comes within the statute of frauds." *Secrest v. Security National Mortgage Loan Trust 2002–2*, 167 Cal. App.4th 544, 553, 84 Cal.Rptr.3d 275 (2008). Moreover, "[a]n agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *Id.* at 553, 84 Cal.Rptr.3d 275 (citing CAL. CIV. CODE § 1698(a) and *Collins v. Marvel Land Co.*, 13 Cal.App.3d 34, 43, 91 Cal.Rptr. 291 (1970)). "A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." *Secrest*, 167 Cal. App.4th at 552, 84 Cal.Rptr.3d 275 (citing CAL CIV. CODE § 1624). Thus, a claim based on an oral contract modifying the terms of a mortgage must be dismissed as barred by the statute of frauds. See *Sequoia Partners, LLC v. F.D.I.C.*, No. 1:11–3057–CL, 2012 WL 1657049, *3 (D.Or. Mar. 13, 2012) ("[T]he statute of frauds, while an affirmative defense, may be the proper subject of a motion to dismiss where the defense is apparent on the face of the complaint," citing *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir.1990)). Griffin alleges that her loan modification agreement was oral, and does not contend that it was memorialized in any written agreement signed by BofA or Green Tree.

Citing *Vissuet v. Indymac Mortgage Servs.*, No. 09–CV–2321–IEG–CA, 2010 WL 1031013, *4 (S.D.Cal. Mar. 19, 2010), Griffin contends that the statute of frauds does not apply to her contract. *Vissuet* is inapposite, however. There, the court held that an oral agreement to postpone a foreclosure sale was not barred by the statute of frauds because it was not an "agreement [ ] for any obligation 'to pay an indebtedness secured' and therefore [wa]s not covered by [§ ] 1624(a)(6)." *Id.* Here, the oral agreement Griffin alleges purportedly modified her mortgage, which *is* an agreement to pay an indebtedness secured by a mortgage or deed of trust. Reliance on *Vissuet* is therefore unavailing.

The court declines to dismiss the promissory estoppel claim on the basis of the statute of frauds, however, because—as noted—the complaint contains no allegations that suggest Green Tree agreed to modify Griffin's mortgage. Moreover, BofA did not raise the statute of frauds in its motion to dismiss. The statute of frauds is treated as a rule of evidence; if not raised by the party to be charged, it is waived. See *Secrest*, 167 Cal. App.4th at 551, 84 Cal.Rptr.3d 275 (citing *In re Marriage of Benson*, 36 Cal.4th 1096, 1104 n. 3, 32 Cal.Rptr.3d 471, 116 P.3d 1152 (2005)); *Howard v. Adams*, 16 Cal.2d 253, 257–258, 105 P.2d. 971 (1940); 1 B. Witkin, SUMMARY OF CAL. LAW, Contracts, § 347 (10th ed. 2005) ("The statute of frauds must ordinarily be asserted in the lower court, and cannot be raised for the first time on appeal"). Although BofA did raise the argument in its reply, the court declines to consider it. See *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir.2007) ("The district court need not consider arguments raised for the first time in a reply brief"); *Klein v. City of Laguna Beach*, 983 F.Supp.2d 1162, 1169–70 (C.D.Cal.2013) ("For the first time in his reply brief, Mr. Klein raises a third basis in support of his request for attorneys' fees: California's catalyst theory. Because this theory was not raised in Mr. Klein's opening brief, the Court declines to consider it"); *Hill v. Opus Corp.*, 464 B.R. 361, 371 n. 34 (C.D.Cal.2011) (refusing to consider an argument raised for the first time in reply); *Ellison Framing, Inc. v. Zurich American Ins. Co.*, 805 F.Supp.2d 1006, 1012–13 (E.D.Cal.2011) (same); *Stewart v. Wachowski*, No. CV 03–02873 MMM, 2004 WL 2980783, *11 (C.D.Cal. Sept. 28, 2004) (same); *Ferguson v. City of Phoenix*, 931 F.Supp. 688, 696 (D.Ariz.1996).

**49.** Complaint, ¶ 39.

**50.** *Id.*, ¶ 40.

claim is based on an alleged loan modification promise, it is sufficiently clear and definite to state a claim. The court agrees.

■■■ BofA maintains that Griffin's promissory estoppel claim must nonetheless be dismissed because she has not adequately alleged that she was injured by relying on the promise; specifically, it maintains that Griffin was already obligated to pay $3,074.38 per month. Thus, it contends, the fact that she remitted three reduced payments of $1,841.50 is not a legally cognizable form of injury.[51] BofA is correct. See *De La Cruz v. Citi Mortg. Inc.*, No. 1:12–cv–0141–AWI–BAM, 2012 WL 487004, *3 (E.D.Cal. Feb. 14, 2012) ("[P]laintiffs do not allege sufficient reliance on the new representation, in that plaintiffs already were bound contractually to make loan payments. Accordingly, Plaintiffs do not state a claim for promissory estoppel"); *Ortiz v. America's Servicing Co.*, No. EDCV 12–191 CAS (SPx), 2012 WL 2160953, *7 (C.D.Cal. June 11, 2012) ("Merely submitting a modification application or making payments to the beneficiary or servicer, however, is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan"); *Lawther v. OneWest Bank, FSB*, No. C–10–00054 JCS, 2012 WL 298110, *19 (N.D.Cal. Feb. 1, 2012) ("This Court has previously held, along with other courts, that where the injury alleged as a result of reliance is that the plaintiffs made payments that they were already obligated to make under the loan contract, no claim for promissory estoppel is stated," citing cases); *Newgent v. Wells Fargo Bank, N.A.*, No. 09–CV–1525 WQH, 2010 WL 761236, *7 (S.D.Cal. Mar. 2, 2010) ("First, Plaintiff alleges that she made a payment that she would not have made if

she did not believe Wells Fargo was renegotiating her mortgage. Because Plaintiff was already legally obligated to make payments on her mortgage, the Court concludes that the payment in reliance on the promise that Wells Fargo would delay the trustee's sale was not detrimental"); see also *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 79, 163 Cal. Rptr.3d 804 (2013) (stating, in the context of a fraud claim, that "[c]ontinuing to make payment on [a] loan ... does not constitute detrimental reliance because Lueras already had the obligation to make those payments").

■■■ Griffin also alleges that in reliance on the promise, she did not resort to alternative means of avoiding foreclosure, which "may have included the filing of a bankruptcy."[52] This allegation also fails to plead detrimental reliance adequately because it is too vague and conclusory. While Griffin pleads that she might have filed a bankruptcy petition had she not believed the loan had been modified, she pleads no other alternative method of saving her home that she might have employed. Nor does she plead facts suggesting that any of the purported alternatives would have been successful in avoiding the damage she purportedly suffered as a result of defendants' conduct. See *Nguyen v. PennyMac Loan Servs., LLC*, No. SACV 12–01574 CJC (ANx), 2012 WL 6062742, *8 (C.D.Cal. Dec. 5, 2012) ("[P]laintiff does not sufficiently allege detrimental reliance. The Complaint contains only conclusory statements that Plaintiff failed to file for bankruptcy or 'investigate' other 'possible scenarios to stave off impending foreclosure.' Such general allegations of detrimental reliance are insufficient to plead promissory estoppel, and fail to meet even the basic pleading standard

---

51. Complaint, ¶ 15.

52. Complaint, ¶ 40.

of Rule 8 and *Twombly*. Plaintiff does not allege that he was induced to take some specific action, that he actually changed his position in reliance on Defendants' purported promises, or that other possible workout options he might have pursued would have been successful"); *Mehta v. Wells Fargo Bank, N.A.*, No. 10CV944 JLS, 2011 WL 1157861, *2 (S.D.Cal. Mar. 29, 2011) ("Plaintiff attempts to plead reliance by alleging that he would have pursued other means to avoid foreclosure had Wells Fargo not promised to delay the sale. In support, Plaintiff identifies several means—tendering funds to cure the default, obtaining a temporary restraining order, and seeking bankruptcy protection. What Plaintiff has not alleged, however, is whether he realistically could have pursued these options three business days before the sale. The SAC does not allege any facts suggesting that Plaintiff would have been successful in taking legal action"); *Newgent*, 2010 WL 761236, at *7 ("Plaintiff alleged[ ] she failed to take legal action to delay the trustee's sale because she believed Wells Fargo had already agreed to delay the sale in exchange for her $2,500.77 payment. Plaintiff does not, however, allege facts that could establish that Plaintiff would have been successful in delaying the foreclosure sale, renegotiating her loan, and retaining possession of the home").

Griffin's promissory estoppel claim is therefore deficiently pled and must be dismissed.

### E. Whether Griffin's Breach of the Covenant of Good Faith and Fair Dealing Claim Must be Dismissed

■ California law implies a covenant of good faith and fair dealing in every contract. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 371, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992); see also *Chodos v. West Publishing Co.*, 292 F.3d 992, 996 (9th Cir.2002) (noting that "California law, like the law in most states, provides that a covenant of good faith and fair dealing is an implied term in every contract" (citations omitted)). The covenant is implied "to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's rights [to] the benefits of the contract." *Marsu B.V. v. Walt Disney Co.*, 185 F.3d 932, 938 (9th Cir.1999) (citing *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*, 17 Cal. App.4th 432, 447, 21 Cal.Rptr.2d 313 (1993)).

■ "The implied covenant of good faith and fair dealing acts as a 'supplement to express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.'" *Moncada v. Allstate Ins. Co.*, 471 F.Supp.2d 987, 996 (N.D.Cal.2006) (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 44, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995)). Thus, there can be a breach of the covenant even if the express terms of the contract are not breached. See *Schwartz v. State Farm Fire and Cas. Co.*, 88 Cal.App.4th 1329, 1339, 106 Cal.Rptr.2d 523 (2001) ("It is well-established that a breach of the implied covenant of good faith is a breach of the contract ... and that breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing"). "It is universally recognized[, however, that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers*, 2 Cal.4th at 373, 6 Cal.Rptr.2d 467, 826 P.2d 710.

■ Griffin alleges that defendants breached the implied covenant of good faith and fair dealing by luring her into

default and failing to honor the purported oral loan modification agreement.[53] She also contends that defendants breached the implied covenant by "renewing their promise to explore options to avoid foreclosure, but failing to do so."[54] Griffin does not, however, identify the specific contractual provision that she contends gives rise to any of these implied duties. "In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged." *Inter-Mark USA, Inc. v. Intuit, Inc.,* No. C–07–04178 JCS, 2008 WL 552482, *6 (N.D.Cal. Feb. 27, 2008) (citing *Love v. The Mail on Sunday,* No. CV05–7798 ABC (PJWx), 2006 WL 4046180, *7 (C.D.Cal. Aug. 15, 2006)); see also *McNeary–Calloway v. JP Morgan Chase Bank, N.A.,* 863 F.Supp.2d 928, 955 (N.D.Cal.2012) ("[T]o state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated"); *Lingad v. Indymac Federal Bank,* 682 F.Supp.2d 1142, 1154 (E.D.Cal.2010) (granting a motion to dismiss plaintiff's breach of the implied covenant of good faith and fair dealing claim because he did not "identif[y] any express provision [of a contract] which has been frustrated by MortgageIT's conduct").

Griffin does not allege whether the contract giving rise to the implied duties is the mortgage, deed of trust, the purported oral modification agreement, or some other contract. While she alleges that defendants took various actions that breached the covenant of good faith and fair dealing, she has not identified any rights she had under the original mortgage loan and note, the deed of trust, or the purported oral

loan modification agreement that were frustrated by defendants' alleged breach of the covenant. For this reason as well, her claim for breach of the implied covenant of good faith and fair dealing fails, and must be dismissed.[55]

### F. Whether Griffin's Negligence Claim Must Be Dismissed

■ To state a negligence claim under California law, a plaintiff must plead: "(1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages." *Palm v. United States,* 835 F.Supp. 512, 520 (N.D.Cal.1993); see also *Krawitz v. Rusch,* 209 Cal.App.3d 957, 963, 257 Cal. Rptr. 610 (1989) ("For a negligence cause of action, the plaintiff must allege a duty, a breach of that duty, and injury to the plaintiff as a proximate result of that breach"); *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 820, 131 Cal.Rptr. 854 (1976) ("According to the familiar California formula, the allegations requisite to a cause of action for negligence are (1) facts showing a duty of care in the defendant, (2) negligence constituting a breach of the duty, and (3) injury to the plaintiff as a proximate result").

Defendants argue that Griffin cannot establish that they owed her a duty of care.[56] In addition, BofA contends that Griffin fails to allege any damages that were proximately caused by its purported breach.[57]

#### 1. Duty of Care

■ Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan

---

**53.** Complaint, ¶ 49.

**54.** *Id.,* ¶ 50.

**55.** BofA Motion at 11.

**56.** BofA Motion at 11–14; Green Tree Motion at 6–8.

**57.** BofA Motion at 15.

transaction does not exceed the scope of its conventional role as a mere lender of money." *Velasquez v. Chase Home Finance LLC,* No. C 10–01641 SI, 2010 WL 3211905, *5 (N.D.Cal. Aug. 12, 2010) (quoting *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991)); see also *Gonzalez v. First Franklin Loan Services,* No. 1:09–CV–00941 AWI–GSA, 2010 WL 144862, *8 (E.D.Cal. Jan. 11, 2010) (same). The principle that a financial institution owes no duty to a borrower has been extended to loan servicers as well. *Azzini v. Countrywide Home Loans,* No. 09cv787 DMS (CAB), 2009 WL 5218042, *2 (S.D.Cal. Dec. 29, 2009); *Wong v. Am. Servicing Co., Inc.,* No. 2:09–CV–01506 FCD/DAD, 2009 WL 5113516, *6 (E.D.Cal. Dec. 18, 2009) ("Plaintiffs fail to allege any facts that as a lender, Meridias or Hicks actively participated in the financed enterprise beyond their capacities as lender and lending agent. Similarly, plaintiffs cite no facts or authority to support their position that American Servicing or MERS owed them a duty of care in their respective capacities as servicer and nominee o[f] the trust. Rather, in their complaint, plaintiffs describe nothing more than an arms-length loan transaction between defendants and themselves.... As such, under the facts pled in the complaint, defendants owed plaintiffs no duty of care").

 Griffin cites *Jolley v. Chase Home Finance, LLC,* 213 Cal.App.4th 872, 898, 153 Cal.Rptr.3d 546 (2013), for the proposition that defendants owed her a duty of care as a result of the manner in which they conducted loan modification negotiations. In *Jolley,* the court held that the lender on a construction loan that had made "specific representations" to the borrower concerning "the likelihood of a loan modification" owed the borrower a duty of care. The court reviewed the six factor test set forth in *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (1958), which is often used in determining whether a duty of care exists. The test involves balancing various factors, including: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Jolley,* 213 Cal. App.4th at 899, 153 Cal.Rptr.3d 546 (citing *Biakanja,* 49 Cal.2d at 650, 320 P.2d 16).

The *Jolley* court concluded that the "false assurances given by Chase personnel about the prospects for a loan modification" were sufficient to give rise to a duty of care under *Biakanja. Id.* at 900–01, 153 Cal.Rptr.3d 546. It noted that the lender's assurances were indisputably intended to affect the plaintiff, and concluded it was "foreseeable that Jolley would sink more of his own money into the [property], thereby suffering further injury" once foreclosure occurred. *Id.* at 900, 153 Cal.Rptr.3d 546. The court also found that actual injury was evident, and concluded that "the upbeat prediction of the availability of a loan modification and ... rollover of the loan into a conventional mortgage was almost certainly a primary factor in causing this particular injury." *Id.* While the court could not determine "how blameworthy Chase's conduct [might] prove to be," it noted that the fact that "Chase benefitted from prolonging the loan renegotiation period and encouraging Jolley to complete construction [at the property] certainly len[t] itself to a blameworthy interpretation." *Id.* For these reasons, the court concluded that Jolley had sufficiently demonstrated that Chase's conduct went beyond that of a mere lender, and that it owed him a duty of care as a result of its representations. *Id.* at 906, 153 Cal.Rptr.3d 546. See also

*Yau v. Deutsche Bank Nat. Trust Co. Americas,* 525 Fed.Appx. 606, 609 (9th Cir. 2013) (Unpub.Disp.) (observing that *Jolley* "applied the six-factor test outlined in [*Biakanja* and] determine[d] [that] a lender or loan servicer owe[d] a duty of care to a borrower").

Following *Jolley,* district courts in California split as to whether the reasoning of the decision applied to lenders in the residential home loan context. Several courts held that a lender that affirmatively promises a residential home loan modification to a borrower owes the borrower a duty of care, while others concluded that the holding was limited to the commercial loan context. Compare *Ansanelli v. JP Morgan Chase Bank, N.A.,* No. C 10–03892 WHA, 2011 WL 1134451, *4–7 (N.D.Cal. Mar. 28, 2011) (holding that defendant lender/servicer "went beyond its role as a silent lender and loan servicer" when it allegedly made an affirmative promise that it would modify plaintiffs' loan, and plaintiffs relied to their detriment on that promise, and stating that the bank "agreed to place plaintiffs on a trial modification plan, guaranteeing that if plaintiffs made payments on time in the modified amount for three months, Chase would provide a permanent modification of their loan"); *Ottolini v. Bank of America,* No. C–11–0477 EMC, 2011 WL 3652501, *7 (N.D.Cal. Aug. 19, 2011) (holding that a servicer did not owe a duty of care to a mortgagor because "the application for loan modification had not progressed to a concrete stage," and distinguishing *Ansanelli* because there "the lender agreed to place the borrower on a loan modification plan") with *Diunugala v. JP Morgan Chase Bank,* No. 12cv2106–WQH–NLS, 2013 WL 5568737, *4 (S.D.Cal. Oct. 3, 2013) ("The Court finds *Jolley* to be inapposite to this case, which involves a residential home loan and related loan servicing issues"); *Ware v. Bayview Loan Servicing, LLC,* No. 13–CV–1310 JLS (NLS), 2013 WL 4446804, *5 (S.D.Cal. Aug. 16, 2013) (finding that no duty of care was owed where a servicer told a mortgagor that approval of a loan modification was imminent).

Recently, the Fourth District California Court of Appeal considered a case similar to this one and addressed whether *Jolley* 's reasoning is applicable in the residential home loan context. See *Lueras v. BAC Home Loans Servicing, LP,* 221 Cal. App.4th 49, 163 Cal.Rptr.3d 804 (2013). Richard Lueras sued Bank of America after it foreclosed on his home thirteen days after sending him a letter promising that no foreclosure sale would take place while Lueras was being considered for foreclosure avoidance programs. *Id.* at 55, 163 Cal.Rptr.3d 804. Lueras had applied for a HAMP loan modification. In response, Bank of America offered to put him in a forebearance program that reduced his monthly payments; it also promised to consider whether "additional default resolution assistance" could be offered. *Id.* at 57, 163 Cal.Rptr.3d 804. Lueras made monthly payments under the forebearance program for 10 months, during which time Bank of America did not work with him to implement a more permanent foreclosure alternative. *Id.* at 58, 163 Cal.Rptr.3d 804. Lueras then submitted all information required in support of a HAMP loan modification application; while he was waiting for a response from Bank of America, the trustee, ReconTrust, served a notice of default and notice of trustee's sale. *Id.* Lueras alleged that at that point, Bank of America made an oral offer to modify his loan under HAMP, which he accepted. *Id.* at 58, 163 Cal.Rptr.3d .804. He asserted that, subsequently, he received a letter stating that the bank had determined he was not eligible for a modification; when he called to inquire, the bank told him this was an error. *Id.* at 58–59, 163 Cal. Rptr.3d 804. On May 6, 2011, he received another letter stating that Bank of Amer-

ica was reviewing his documents to determine whether he was eligible for a HAMP loan modification. *Id.* at 59, 163 Cal. Rptr.3d 804. The letter stated that he would be notified whether the modification had been approved, whether he was not eligible for a loan modification, or whether the bank needed more information to make a decision. *Id.* When Lueras contacted the bank, he was told that the second letter had also been in error as his application had already been approved. *Id.* Nonetheless, on May 18, 2011, the bank conducted a foreclosure sale. *Id.*

■ The *Lueras* court first surveyed the law regarding a lender's duty of care to a borrower and then focused specifically on *Jolley*. It held:

"We disagree with *Jolley* to the extent it suggests a residential lender owes a common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives.... We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money. A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies. The *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a need for a loan modi-

fication, then no moral blame would be attached to the lender's conduct." *Id.* at 67, 163 Cal.Rptr.3d 804.

The *Lueras* court did hold, however, "that a lender ... owe[s] a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale. The law imposes a duty not to make negligent misrepresentations of fact." *Id.* at 68–69, 163 Cal.Rptr.3d 804.

Based on this analysis, the *Lueras* court concluded that Bank of America could not be liable for negligence as a result of the loan modification discussions because "Lueras [had] not allege[d] [that] Bank of America ... did anything wrongful that made him unable to make the original monthly loan payments. Lueras did not allege Bank of America and ReconTrust caused or exacerbated his initial default by negligently servicing the loan. To the contrary, he alleged his inability to make the payments was caused by financial hardship." *Id.* at 68, 163 Cal.Rptr.3d 804. The court held that Bank of America could not be liable for failing to "follow through" on an agreement it had made with Lueras to modify his loan because the remedy for that failure "[lay] in breach of contract, not negligence." *Id.* It granted leave to amend, however, because it found it possible that Lueras could allege Bank of America negligently misrepresented the status of the application for the loan modification or the date, time, or status of the foreclosure sale. *Id.*

After *Lueras* was decided, a different California Court of Appeal decision imposed a duty of care on lenders that accept loan modification applications. In *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal.App.4th 941, 948, 176 Cal.Rptr.3d 304 (2014), the court held that a lender owed a duty to exercise reasonable care in pro-

cessing and reviewing plaintiffs' loan modification applications. The court noted the apparent conflict between *Jolley* and *Lueras,* but focused the majority of its discussion on *Garcia v. Ocwen Loan Servicing, LLC,* No. C 10–0290 PVT, 2010 WL 1881098, *3 (N.D.Cal. May 10, 2010). There, the court concluded that a lender "arguably owed [p]laintiff a duty of care in processing [p]laintiff's loan modification application, as at least five of the six [*Biakanja*] factors weigh in favor of finding a duty of care." The *Alvarez* court found *Garcia's* reasoning persuasive. It stated:

> "Here, because defendants allegedly agreed to consider modification of the plaintiffs' loans, the *Biakanja* factors clearly weigh in favor of a duty. The transaction was intended to affect the plaintiffs and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to the applicants. Plaintiffs allege that the mishandling of their applications 'caus[ed] them to lose title to their home, deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages.' ... 'Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief.' Should plaintiffs fail to prove that they would have obtained a loan modification absent defendants' negligence, damages will be affected accordingly, but not necessarily eliminated." *Alvarez,* 228 Cal. App.4th at 948–49, 176 Cal.Rptr.3d 304 (internal citations omitted).

As respects the fifth *Biakanja* factor, the court found it "highly relevant that the borrower's 'ability to protect his own interests in the loan modification process [is] practically nil' and the bank holds 'all the cards.'" *Id.* at 949, 176 Cal.Rptr.3d 304 (citing *Jolley,* 213 Cal.App.4th at 900, 153 Cal.Rptr.3d 546). It held that a borrower's lack of bargaining power, "coupled with conflicts of interest that exist in the modern loan servicing industry[,] provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers seeking a loan modification." *Id.* Finally, citing *Jolley,* the court found the final *Biakanja* factor, the policy of preventing future harm, also "strongly favor[ed] imposing a duty of care on [lenders]." *Id.* at 950, 176 Cal.Rptr.3d 304 (citing *Jolley,* 213 Cal.App.4th at 903, 153 Cal.Rptr.3d 546).

Given the differing outcomes in *Lueras* and *Alvarez,* it is clear that whether a residential lender owes a duty of care to a borrower in connection with a loan modification application is a subject about which the California Courts of Appeal disagree.

■ In *Benson v. Ocwen Loan Servicing, LLC,* 562 Fed.Appx. 567, 569–70 (9th Cir.2014) (Unpub.Disp.), the Ninth Circuit expressly held that *Jolley* was confined to construction lenders, and cited *Lueras* with approval for the proposition that HSBC Bank did not owe a common law duty of care to the plaintiff-borrower. See *id.* ("The district court did not err in dismissing Benson's negligence claim against Ocwen and HSBC for failure to state a claim, because neither Ocwen nor HSBC owed Benson a common law duty of care. The duty of care imposed on construction lenders, does not apply in the residential loan context"). The court finds the Ninth Circuit's conclusion in *Benson* that *Jolley* is limited to construction lenders persuasive. Moreover, a second California appellate court has adopted the *Lu-*

*eras* court's view that *Jolley* is confined to the construction loan context. See *Aspiras v. Wells Fargo Bank, N.A.*, 162 Cal. Rptr.3d 230, 242–43 (Cal.App.2013) (Unpub.Disp.) (holding, in a case involving the possible modification of a residential loan, that the reasoning in *Jolley* was dicta, that the circumstances underlying residential loans and construction loans are distinguishable, and that "the handling of loan modification negotiations or servicing is a typical lending activity that precludes imposition of a duty of due care").[58] Accordingly, although not without doubt, the court finds that the weight of California and Ninth Circuit authority supports limiting *Jolley* to loans made by construction lenders, and leaves intact the general rule that a lender owes no duty to a borrower unless it steps outside its conventional role as a lender. Because negotiating a loan modification does not fall outside this role, Griffin has not adequately alleged that defendants owed her a duty of care, and her negligence claim must be dismissed.

### 2. Damages

■ BofA also asserts that Griffin has not adequately alleged that any breach of duty caused damage. To allege damages sufficiently, Griffin must plead that "[she] would have obtained a loan modification absent [defendants'] negligence" and/or that she suffered "other damages." *Alvarez*, 228 Cal.App.4th at 949, 176 Cal. Rptr.3d 304. The complaint does not allege that, but for defendants' purported negligence, Griffin's loan modification application would have been approved. Nor are there allegations of "other damages" proximately caused by the purported negligence. Consequently, even had Griffin

adequately alleged that defendants owed her a duty of care, the court would have to dismiss the negligence claim as deficiently pled. See *Stiles v. Wells Fargo Bank*, No. CV 14–04169 DMR, 2014 WL 7146950, *7 (N.D.Cal. Dec. 15, 2014) (dismissing a negligence claim where, *inter alia*, plaintiff did "not adequately allege[ ] that she suffered damages as a result of any negligence on Defendant's part"); *Maomanivong v. Nat'l City Mortg. Co.*, No. CV 13–05433 DMR, 2014 WL 4623873, *16 (N.D.Cal. Sept. 15, 2014) (dismissing a negligence claim where, *inter alia*, "there was no indication of the likelihood that her loan modification would have been granted").

### G. Whether Griffin's CLRA Claim Must Be Dismissed

■ The CLRA makes illegal various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." CAL. CIV. CODE § 1770(a). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App.4th 663, 680, 38 Cal.Rptr.3d 36 (2006) (quoting *Nagel v. Twin Laboratories, Inc.*, 109 Cal.App.4th 39, 54, 134 Cal.Rptr.2d 420 (2003)). A "reasonable consumer" is an "ordinary consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture. . . ." *Id.* (citing 1A CALLMANN ON UNFAIR COMPETITION, TRADE-

---

**58.** "Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05–313 VRW, 2005 WL 2893865, *3 (N.D.Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

MARKS AND MONOPOLIES § 5:17 (4th ed.2004)).

Defendants argue that Griffin's CLRA claim is deficient because a loan is not a good, nor is it the sale or lease of a service.[59] Griffin does not oppose defendants' motion to dismiss this claim.[60] Defendants are correct that a mortgage loan is not a good or service as those terms are defined in the CLRA. See CAL. CIV. CODE § 1761(a) (defining "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes"); *id.*, § 1761(b) (defining "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods"); *Gibbs v. JP Morgan Chase Bank*, No. EDCV 12 0239 AG (DTBx), 2013 WL 8360300, *5 (C.D.Cal. Feb. 12, 2013) ("Defendant asserts that Plaintiff fails to state a claim under the [CLRA] because CLRA does not typically apply to mortgages. The Court agrees").

In *Fairbanks v. Superior Court*, 46 Cal.4th 56, 61, 92 Cal.Rptr.3d 279, 205 P.3d 201 (2009) the California Supreme Court held that a life insurance contract was not a "service" under the CLRA because an "insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel." *Id.* Federal courts interpreting *Fairbanks* have determined that it precludes a CLRA claim where a defendant-lender allegedly "demand[s] money to which it is not entitled and tr[ies] to enforce a rescinded loan" because these allegations "challenge[ ] only the validity of the mortgage loan and not any nonancillary services related to the loan." *Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1015–17 (N.D.Cal.2009).

Where a claim is not based on "allegations that [a d]efendants' interaction with [a p]laintiff[ ] went beyond a contract to" to extend credit, the CLRA does not apply to mortgage loans. See *Rex v. Chase Home Fin. LLC*, 905 F.Supp.2d 1111, 1157 (C.D.Cal.2012); *Mejia v. EMC Mortg. Corp.*, CV 09–4701 CAS (Ex), 2012 WL 367364, *4 (C.D.Cal. Feb.2, 2012) ("The CLRA does not apply to mortgage loans ... because a loan is not a good or service"); *Consumer Solutions REO, LLC*, 658 F.Supp.2d at 1015–17; *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1488, 49 Cal.Rptr.3d 227 (2006) ("Plaintiffs cite no authority or make no argument demonstrating that Washington Mutual's actions were undertaken 'in a transaction intended to result or which results in the sale or lease of *goods* or *services.*' Rather, its actions were undertaken in transactions resulting in the sale of real property. The CLRA thus is inapplicable and plaintiffs have demonstrated no error in the trial court's sustaining of defendants' demurrer without leave to amend as to their CLRA cause of action").

Griffin's allegations focus exclusively on her mortgage and/or the purported loan modification agreement. Accordingly, the court must dismiss her CLRA claim as inadequately pled. Because Griffin did not oppose defendants' motion to dismiss the claim, which constitutes abandonment of the claim, the court dismisses it with prejudice. See *Trehuba v. Am. Home Mortgage Servicing Inc.*, No. C12–5752 RBL, 2014 WL 7474121, *1 n. 4 (W.D.Wash. Dec. 23, 2014) ("Trehuba's response abandons his Deed of Trust Act

---

**59.** BofA Motion at 15; Green Tree Motion at 8.

**60.** Green Tree Opposition at 9 ("Plaintiff does not oppose the motion on this claim"); BofA Motion at 12 (same).

claim, and it is DISMISSED with prejudice"); *Gulinson v. Bank of Am., NA,* No. CV 12–0495 PHX JAT, 2012 WL 1609644, *2 (D.Ariz. May 7, 2012) ("[B]y voluntarily abandoning her federal claims, Plaintiff has agreed that this Court can dismiss such claims with prejudice," citing *Pitts v. Terrible Herbst, Inc.,* 653 F.3d 1081, 1093 (9th Cir.2011)).

### H. Whether Griffin's Claim for Specific Performance Must Be Dismissed

 Defendants also argue that Griffin's claim for specific performance must be dismissed as specific performance is a remedy, not a separate cause of action.[61] The court agrees that Griffin's specific performance claim must be dismissed because under California law, specific performance is a remedy for breach of contract, not an independent claim. See, e.g., *Mycogen Corp. v. Monsanto Co.,* 28 Cal.4th 888, 896, 123 Cal.Rptr.2d 432, 51 P.3d 297 (2002) (describing "the equitable remedy of specific performance" as a remedy for breach of contract); *Wong v. Tai Jing,* 189 Cal.App.4th 1354, 1361 n. 2, 117 Cal.Rptr.3d 747 (2010) ("Wong also purported to assert a cause of action for 'specific performance/injunctive relief.' However, specific performance and injunctive relief are equitable remedies and not causes of action for injuries"); *Rogers v. Davis,* 28 Cal.App.4th 1215, 1217 n. 2, 34 Cal.Rptr.2d 716 (1994) ("Legally, plaintiffs had but one cause of action, for breach of contract. Specific performance and damages are simply alternative *remedies* for breach of contract" (emphasis original)); see also *Guidiville Rancheria of Calif. v. United States,* 5 F.Supp.3d 1142, 1159 (N.D.Cal.2013) ("Specific performance is a contract remedy derivative of Plaintiffs' breach of contract claim, rather than a separate cause of action"); *Gardner v.*

*RSM & A Foreclosure Services, LLC,* No. 12–CV–2666–JAM–AC, 2013 WL 1129392, *4 (E.D.Cal. Mar. 18, 2013) ("[S]pecific performance is not an independent cause of action for injury, but an equitable remedy. Thus, insofar as this has been pled as a distinct cause of action, it is dismissed with prejudice"); *Davis v. City of Oakland,* No. C97–4330 FMS, 1998 WL 196470, *6 (N.D.Cal. Apr. 15, 1998) ("Defendant points out that specific performance is a remedy for breach of contract rather than a cause of action. Defendant is correct"); B. Witkin, CALIFORNIA PROCEDURE Pleadings, § 784 (5th ed. 2009) ("Specific performance is an alternative remedy; the cause of action is for breach of contract").

Because specific performance is a remedy, not an independent cause of action, Griffin's specific performance claim is dismissed with prejudice. Griffin may include a request for specific performance as a remedy in any restated breach of contract claim and in the prayer, but she may not replead a separate specific performance claim.

### I. Whether Griffin's Fraud and Negligent Misrepresentation Claims Must Be Dismissed

 Griffin also alleges claims for fraud and negligent misrepresentation. To plead a fraud claim, a party must allege (1) a knowingly false representation or fraudulent omission by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages. *Croeni v. Goldstein,* 21 Cal.App.4th 754, 758, 26 Cal.Rptr.2d 412 (1994). "The elements of negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to

**61.** Green Tree Motion at 9; BofA Motion at 15.

induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 n. 2 (9th Cir.2001).

 "Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093 (C.D.Cal.1999); see also *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp. 1053, 1058 (N.D.Cal.1991). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." FED.R.CIV.PROC. 9(b). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the *particular* misconduct so that they can defend against the charge[.]" *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (emphasis added and internal citations omitted). Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." See *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir.2004)); see also *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986) ("[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Miscellaneous Serv. Workers Local # 427 v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir.1981) (holding that Rule 9(b) requires a pleader to set forth the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Dielsi v. Falk*, 916 F.Supp. 985, 995

n. 12 (C.D.Cal.1996) ("The fraud complaint should generally set out the time, place, and content of alleged misrepresentations, who made the statements, [and] why they were false, as well as set forth specific facts to show the defendant's knowledge of material falsity," citing *In re GlenFed Securities Litig.*, 42 F.3d 1541, 1547–58 (9th Cir.1994) (en banc), superseded by statute on other grounds as stated in *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D.Cal.1996)).

 Conclusory allegations are insufficient, and the facts constituting the fraud must be alleged with specificity. See *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient" (citation omitted)); see also *Swartz*, 476 F.3d at 764 ("Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.' 'To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong,'" citing *Edwards*, 356 F.3d at 1066, and *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir:2001)); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (to satisfy Rule 9(b), "the complaint [must] identif[y] the circumstances of the alleged fraud so that defendants can prepare an adequate answer" (internal quotation marks omitted)); *Flowers v. Wells*

*Fargo Bank, N.A.*, No. C 11–1315 PJH, 2011 WL 2748650, *6 (N.D.Cal. July 13, 2011) (explaining that "[f]raud allegations must be specific enough to give defendants notice of the particular misconduct that is alleged to constitute the fraud so that they can defend against the claim. For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written" (citations omitted)).

■■■■■■ Green Tree and BofA argue that the fraud and negligent misrepresentation claims must be dismissed because they fail to satisfy Rule 9(b). First, they contend that Griffin does not adequately plead the specific content of the fraudulent/negligent misrepresentations that were allegedly made. See *Rosado v. eBay Inc.*, 53 F.Supp.3d 1256, 1262 (N.D.Cal. 2014) ("To that end, the allegations must contain 'an account of the time, place, *and specific content* of the false representations as well as the identities of the parties to the misrepresentations,'" quoting *Swartz*, 476 F.3d at 764 (emphasis added)). The court disagrees. Griffin asserts that BofA and Green Tree fraudulently represented they were "ready, willing and able to work with [her] to ascertain whether she could qualify to modify her existing loan so as to enable [her] to bring her property out of default." [62] Although this allegation could be more precise, it is suffi-

ciently definite to satisfy Rule 9(b). Consequently, this aspect of the claims is sufficient under Rule 9(b). [63]

■■■■ Griffin, however, alleges that defendants' representations were false when made, but pleads no facts indicating why the representations were false. See *Smith v. Allstate Ins. Co.*, 160 F.Supp.2d 1150, 1152 (S.D.Cal.2001) ("the plaintiff must plead facts explaining why the statement was false when it was made" (citation omitted)); see also *Rosado*, 53 F.Supp.3d at 1261–62. Griffin's conclusory allegation does not adequately plead fraud or negligent misrepresentation for purposes of Rule 9(b). For this reason, the claims must be dismissed.

■■■■ Defendants also argue that Griffin fails to identify who at BofA and Green Tree made the fraudulent/negligent misrepresentations. Rather, she alleges that "BAC and thus G[reen] T[ree], by and through unknown representatives, agents and employees," "falsely and fraudulently represented and concealed from her that they were ready and willing to engage in loan modification negotiations." [64]

■■■■ Where fraud has allegedly been perpetrated by a corporation, plaintiff must allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities. See, e.g., *U.S.*

---

62. Complaint, ¶¶ 72, 82.

63. Griffin also adequately pleads when the purported fraud or negligent misrepresentation occurred, as she alleges it occurred in May 2014. (*Id.*) By narrowing the range of possible dates on which the fraud or negligent misrepresentation occurred, Griffin has sufficiently alleged the "when" of the misconduct. Compare *Interserve, Inc. v. Fusion Garage PTE. Ltd.*, No. C–095812–RS–PSG, 2011 WL 500497, *3 (N.D.Cal. Feb. 9, 2011) (denying a motion to dismiss where allegations concern-

ing "the purported fraud [were] limited to a narrow window of time") with *United States v. Hempfling*, No. CV 05–00594–OWW–SMS, 2005 WL 2334713, *6 (E.D.Cal. Sept. 23, 2005) ("While Rule 9(b)'s particularity requirement is not as stringently applied where fraud is alleged to have occurred over a longer period of time, Plaintiff's complaint lacks even a range of dates during which [defendant] held his seminars, posted information on his website, and sold his products").

64. Complaint, ¶ 72.

*ex rel. Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1051 (9th Cir.2001) (holding that Rule 9(b) was not satisfied, *inter alia,* because plaintiff did not "identify the [defendant's] employees who performed the tests, or provide any dates, times, or places the tests were conducted"); *Arch Ins. Co. v. Allegiant Prof'l Bus. Servs., Inc.,* No. CV 11–1675 CAS (PJWx), 2012 WL 1400302, *3 (C.D.Cal. Apr. 23, 2012) ("The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written"); *Dooms v. Fed. Home Loan Mortgage Corp.,* No. CV F 11–0352 LJO DLB, 2011 WL 1232989, *14 (E.D.Cal. Mar. 31, 2011) ("In a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written' "); *Flowers,* 2011 WL 2748650 at *6 (same).

█ Rule 9(b), moreover, "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.' " *Swartz,* 476 F.3d at 764–65 (quoting *Haskin v. R.J. Reynolds Tobacco Co.,* 995 F.Supp. 1437, 1439 (M.D.Fla.1998)); *Moore,* 885 F.2d at 541 (holding that in the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme"). Griffin does not differenti-

ate between BofA and Green Tree, and in fact appears to maintain that BofA's conduct can be imputed to Green Tree.[65] This is not permitted under Rule 9(b). Furthermore, Griffin fails to identify the alleged BofA and/or Green Tree employees who made the fraudulent/negligent misrepresentation even by titles and/or job responsibilities. Consequently, she fails adequately to allege the "who" of the wrongful conduct.

█ Griffin's complaint also fails to plead the "where" of the fraudulent/negligent misrepresentations sufficiently. She pleads nothing about the location of the fraudulent or negligent misrepresentations.[66] If the communications were verbal, Griffin must know where she and the representative of one or more of the defendants were when they took place. If the communications were sent via email, she must know where she was when she received the email, and possibly where the sender was as well. If she recalls specific emails or conversations, moreover, she can plead them in detail, and thus give further content to the "who" and "when" of the fraud as well. This is the level of specificity required by Rule 9(b), and Griffin's complaint as currently pled fails to provide it.

For all of these reasons, Griffin's fraud and negligent misrepresentation claims must be dismissed for failure to satisfy the particularity requirement of Rule 9(b).

### J. Whether Griffin's Claim For Declaratory Relief Must Be Dismissed

█ Finally, defendants argue that Griffin's declaratory relief claim must be

---

**65.** *Id.,* ¶ 72 ("BAC *and thus* G[reen] T[ree], by and through unknown representatives, agents, and employees ...." (emphasis added)). This allegation appears to conflate BAC's con-

duct with that of Green Tree, which is improper.

**66.** See *id.*

dismissed because it is duplicative of other causes of action that have been dismissed. Federal courts sitting in diversity apply the substantive law of the forum state. See *Clark v. Allstate Insurance Co.*, 106 F.Supp.2d 1016, 1018 (S.D.Cal.2000) ("It is well-established that federal courts sitting in diversity must apply state substantive law and federal procedural rules," citing *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F.Supp.2d 980, 986 (S.D.Cal.1999), and *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). As a consequence, federal courts have consistently applied California Code of Civil Procedure § 1060 to assess the validity of a declaratory relief claim rather than the federal Declaratory Judgment Act when sitting in diversity. See, e.g., *Acceptance Insurance Co. v. American Safety Risk Retention Group, Inc.*, No. 08cv1057–L(WMc), 2010 WL 744291, *4 (S.D.Cal. Mar. 3, 2010) (applying § 1060 to a declaratory relief claim); *LeFebvre v.*

*Syngenta Biotechnology, Inc.*, No. C 08–02732 JW, 2008 WL 5245056, *3 (N.D.Cal. Dec. 15, 2008) (same); *Smith v. Bioworks, Inc.*, No. CIV. S–05–1650 FCDEFB, 2007 WL 273948, *4 n. 5 (E.D.Cal. Jan. 29, 2007) ("Plaintiff generally alleges a claim for declaratory relief in his Complaint. Because this is a diversity action, and because plaintiff alleges that California law applies in this action, the court applies California's declaratory relief statute to plaintiff's claims").[67]

Section 1060 provides that:

"[a]ny person interested under a written instruction ... or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action ... for a declaration of his or her rights and duties[.]" CAL. CODE CIV. PROC. § 1060.

**67.** A number of courts outside this circuit have concluded that the federal Declaratory Judgment Act ("DJA") is procedural rather than substantive, and therefore that a court sitting in diversity must apply the federal standard. See *Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1332–33 (11th Cir. 1989) (holding that Declaratory Judgment Act is procedural not substantive law), abrogated on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir.1986) ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases"); *118 East 60th Owners. Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 203 (2d Cir.1982) ("Normally, the availability of state declaratory relief would be irrelevant to whether federal court may grant such a remedy"); *Farmers Alliance Mutual Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir.1978) ("It is well recognized that the [Declaratory Judgment] Act involves procedural remedies and not substantive rights"). But see *Allstate Ins. Co. v. Charneski*, 286 F.2d 238, 24344 (7th Cir.1960)

(because under Wisconsin law, a declaratory judgment of insurance non-coverage was not available, that was the substantive policy of the state and had to be applied by a federal court sitting in diversity). The court need not determine whether state or federal law applies because the standard for pleading a declaratory relief claim under federal and California law is substantially similar. Under the DJA, a party is only entitled to a declaratory judgment if " 'a substantial controversy [exists] between ... parties having adverse legal interests, [and that controversy is] of sufficient immediacy and reality to warrant issuance of a declaratory judgment.' " *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir.1992) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)); 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought").

Because Griffin has failed to state any substantive claims adequately, her declaratory relief claim fails. See *Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10–cv–08185–ODW (FFMx), 2012 WL 6140962, *8 (C.D.Cal. Dec. 11, 2012) ("Declaratory and injunctive relief do not lie where all other claims have been dismissed. Javaheri is therefore not entitled to declaratory or injunctive relief without a viable underlying claim"); *Shaterian v. Wells Fargo Bank, N.A.*, 829 F.Supp.2d 873, 888 (N.D.Cal.2011) ("Shaterian's tenth claim seeks a declaration concerning the rights and duties of the parties with respect to his first nine claims. This claim is ultimately a request for relief, and Shaterian is not entitled to such relief absent a viable underlying claim. Accordingly, the court DISMISSES Shaterian's claim for declaratory relief to the extent it seeks a declaration concerning Shaterian's dismissed claims, i.e., claims two, four, five, eight, and nine"); *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022, 1038 (N.D.Cal.2010) ("Plaintiff has failed to state any claims, so there is no actual and present controversy"). Accordingly, the court dismisses the declaratory relief claim.

## III. CONCLUSION

For the reasons stated, the court grants defendants' motions to dismiss. Griffin's CLRA and injunctive relief claims are dismissed with prejudice. The balance of her claims are dismissed with leave to amend. See *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir.2005) ("Dismissal without leave to amend is improper unless it is clear ... that the complaint could not be saved by any amendment."); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir.2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9

L.Ed.2d 222 (1962)). Griffin may file an amended complaint within twenty (20) days of the date of this order if she is able to remedy the deficiencies the court has noted.

Griffin may not plead additional claims or add allegations that are not intended to cure the specific defects the court has noted. Should any amended complaint exceed the scope of leave to amend granted by this order, the court will strike the offending portions under Rule 12(f). See Fed.R.Civ.Proc. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."); see also *Barker v. Avila*, No. 2:09–cv–00001–GEB–JFM, 2010 WL 3171067, *1–2 (E.D.Cal. Aug. 11, 2010) (striking an amendment to federal law claim where the court had granted leave to amend only state law claims).

Because defendants are similarly situated, the court directs them to file a single motion to dismiss any amended complaint. Should defendants believe they require additional pages to address all of the arguments they desire to make, they may file an appropriate application seeking permission to file an oversized brief.