Filed 4/12/22  Wilkes v. JPMorgan Chase Bank, N.A. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CLAUDE WILKES, | H046397 |
| | (Santa Clara County |
| Plaintiff and Appellant, | Super. Ct. No. 1-17-CV307658) |
| v. | |
| JPMORGAN CHASE BANK, N.A. et al., | |
| Defendants and Respondents. | |

In July 2007, Claude Wilkes (Wilkes) obtained a loan of $960,000 from Washington Mutual Bank, FA (WaMu), memorialized by a note secured by a deed of trust encumbering a condominium unit located at Santana Row in San Jose (the Property).  Wilkes defaulted on the loan in 2010, and he filed for bankruptcy protection in 2011.

Wilkes filed this action on March 21, 2017, against WaMu's successor, JPMorgan Chase Bank, N.A. (Chase Bank or the Bank) and the trustee, Quality Loan Service Corporation (Quality).  He twice amended his complaint.  The court sustained with leave to amend Chase Bank's demurrer to the first amended complaint.  Wilkes filed a second amended complaint (the Complaint), which included causes of action for promissory estoppel, breach of the implied covenant of good faith and fair dealing, and violation of Business and Professions Code section 17200 et seq., the Unfair Competition Law

(UCL).  The essential claims asserted by Wilkes relate to promises allegedly made by Chase Bank in 2009 or 2010 (pre-bankruptcy), and in 2011 (post-bankruptcy) concerning Wilkes's potential submission of an application for a modification of his loan.  Chase Bank's demurrer to the Complaint was sustained without leave to amend, and the court entered a judgment of dismissal on August 27, 2018.

Wilkes contends that the court erred in sustaining the demurrer to the Complaint without leave to amend.  We conclude there was no error and will affirm the judgment of dismissal.[1]

## I. PROCEDURAL BACKGROUND

### A. First Amended Complaint

Wilkes filed his initial complaint on March 21, 2017.  On or about June 20, 2017, Wilkes filed a first amended complaint alleging eight causes of action.  Chase Bank filed a demurrer to the first amended complaint.  On December 12, 2017, the court, in a detailed minute order, sustained the demurrer with leave to amend as to seven causes of action and overruled the demurrer as to the eighth cause of action for declaratory relief.

---

[1] Quality was named as a defendant below.  Quality submitted a letter to this court in February 2011 requesting that it be removed from the list as a party to this appeal, based upon the following circumstances:  (1) in its capacity as trustee, on April 19, 2017, Quality filed in the court below a declaration of nonmonetary status under Civil Code section 2924*l*; (2) under the applicable statute, an objection to such a declaration may be filed within 15 days (*id.*, § 2924*l*, subd. (c)); (3) if no timely objection is received, the trustee filing the declaration is excused from further participation in the case, will not be subject to any monetary awards for damages, attorney fees, or costs, but shall be bound by the judgment (*id.*, § 2924*l*, subd. (d)); (4) no objection to Quality's declaration was timely filed, and Quality thus, under Civil Code section 2924*l*, became a nonparty on May 8, 2017; and (5) Quality was, in any event, not a party to the judgment because it was not a party to the demurrer to the Complaint at issue.  This court advised the parties that it had received Quality's letter indicating it was not a party to the appeal.  No objection to Quality's letter to this court was submitted by Wilkes or Chase Bank.

2

## B. Second Amended Complaint

On or about December 21, 2017, Wilkes filed his (Second Amended) Complaint alleging five causes of action, namely, promissory estoppel, wrongful foreclosure, breach of the implied covenant of good faith and fair dealing (breach of implied covenant), violation of the UCL, and declaratory relief. Each of these causes of action had been alleged previously in the first amended complaint.[2] In his Complaint, Wilkes alleged, among other things, the following facts, which are admitted for purposes of demurrer to be true. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213-214 (*Committee on Children's Television*), superseded by statute as stated in *Californians For Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227.)

In January 2006, Wilkes signed two promissory notes totaling $843,880 that were secured by deeds of trust against the Property. In July 2007, Wilkes refinanced the two loans with a new loan for $960,000 from WaMu that was memorialized by a note and deed of trust.

In or about December 2009, when Wilkes attempted to make a payment at a local branch of Chase Bank, he was informed by a teller that his "payment could not be processed and he needed to speak with a [h]ome lending advisor." Wilkes thereafter met with Bank representative Cheryl Barcelona, who told him that his "loan was in default and he would need to miss a couple more payments to qualify for their loan modification program." Wilkes relied on Barcelona's representations by "miss[ing] consecutive payments to apply for a loan modification," and he submitted three complete loan modification applications in 2010. Chase Bank, however, sent letters to Wilkes advising

---

[2] The other three causes of action in the first amended complaint that were omitted in the (Second Amended) Complaint were claims for violation of Civil Code section 2924, subdivision (a)(6), for cancellation of written instruments, and for violation of Civil Code section 2923.4.

him "they had not received a complete package," and the Bank "failed to ever review [Wilkes] for a loan modification."

Wilkes filed for Chapter 13 bankruptcy protection in February 2011. He alleged that in that proceeding, he executed a "Stipulation for Adequate Protection" (the Stipulation) under which Chase Bank "agreed to consider [Wilkes] for loan modification." Pursuant to that Stipulation, Wilkes agreed to make monthly mortgage payments of $2,970 beginning September 1, 2011. Wilkes "believed that his loan would be modified following the $2,970 monthly payments." His initial payment at the Bank's local branch was rejected, and he was thereafter advised to make payments to the Bank's counsel. After Wilkes made payments to Chase's counsel, Wilkes was advised that he should make the payments directly to Chase. Wilkes made the monthly payments under the Stipulation, but "the promised loan modification was never provided," and Chase denied having received the payments.

In or about March 2016, Wilkes completed his payments "on time" under the payment plan specified in his bankruptcy proceedings. The next month, he was informed by the bankruptcy trustee that "the CHASE loan modification was still in pending status and that as a result [Wilkes's'] bankruptcy was going to be dismissed." He thereafter received a notice that his bankruptcy proceeding was closed without discharge.

The first cause of action of the Complaint was a claim for promissory estoppel. Wilkes alleged that (a) the Bank made false promises that it would consider him for a loan modification; (b) he relied on those promises by complying with the Bank's suggestion that he miss additional monthly payments in 2010, submitting required loan modification applications, and by making payments during the bankruptcy in accordance with the Stipulation; and (c) he was unaware of the falsity of the Bank's statements until the bankruptcy proceedings were dismissed in 2016 with his loan modification request still in pending status.

4

In the third cause of action for breach of implied covenant, Wilkes alleged that although his "loan was void ab initio," there were "implied obligations to act in good faith toward [Wilkes] in carrying out the purpose and intent of the contractual agreement, including the enforcement of the agreements." (Original underscoring.) He alleged that Chase Bank breached its obligations under the implied covenant to act in good faith, and he was damaged as a result of that breach.

The fourth cause of action of the Complaint was a claim for violation of the UCL. Wilkes alleged that the actions of Defendants were "unlawful, unfair and/or fraudulent business practices" under the UCL.[3]

## C.    Demurrer to Second Amended Complaint

Chase Bank filed a demurrer to the Complaint. It asserted that each of the five causes of action failed to state facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.10, subd. (e).)[4] Included with the Bank's demurrer was a request for judicial notice of seven documents, including the subject deed of trust recorded July 25, 2007, and an "Order Approving Stipulation for Adequate Protection" filed in the bankruptcy court on or about October 3, 2011.

Wilkes filed opposition to the demurrer. Wilkes did not oppose Chase Bank's request for judicial notice, except as to a purchase and assumption agreement involving Chase Bank concerning the loan (which agreement is not relevant here).[5]

---

[3] As discussed, *post*, Wilkes has forfeited any challenge to the court's order sustaining demurrer to the Complaint as to the second and fifth causes of action for wrongful foreclosure and declaratory relief, respectively. Accordingly, we need not describe the allegations in the Complaint concerning those causes of action.

[4] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[5] Wilkes also objected to the deed of trust attached to the Bank's request for judicial notice, based on the contention that it was void and because the copy attached to the request did not bear a recordation stamp. In its reply in support of demurrer, Chase Bank attached a copy of the deed of trust showing its recordation on July 25, 2007.

5

The court issued a minute order on July 11, 2018. It was recited in the minute order that the hearing had been continued approximately six weeks to permit Wilkes to retain counsel and submit opposition; the opposition was filed late;[6] the Bank filed a reply; there was no appearance at the hearing scheduled for July 10, 2018, and the tentative ruling was adopted; the court ruled that the "[o]pposition present[ed] no substantive legal or factual basis to overrule demurrer"; and the court sustained the Bank's demurrer to the Complaint without leave to amend. The court did not address the Bank's request for judicial notice in the minute order. A judgment of dismissal was filed August 27, 2018. Wilkes filed a timely notice of appeal.[7]

## II. DISCUSSION

### A. Demurrers and Standards of Review

A party against whom a complaint or cross-complaint has been filed may file a demurrer to the pleading on particular grounds specified by statute, including the ground that the challenged pleading fails to allege facts sufficient to constitute a cause of action. (§ 430.10, subd. (e).) A demurrer does not "test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading." (*Committee on Children's Television, supra,* 35 Cal.3d at p. 213.) As such, "the facts alleged in the pleading are deemed to be true,

---

[6] Wilkes was represented by counsel when his complaint, first amended complaint, and (Second Amended) Complaint were filed. At some date not disclosed in the record, but after the Bank's demurrer to the Complaint was filed on January 25, 2018, Wilkes became a self-represented litigant. He did not thereafter retain counsel. The opposition to demurrer was filed on July 2, 2018, by Wilkes as a self-represented litigant.

[7] Chase Bank filed a motion to dismiss the appeal, arguing that the notice of appeal was untimely. Wilkes opposed the motion, asserting that the notice of appeal was submitted to the superior court in a timely manner, but the clerk of the superior court rejected the filing on an improper ground. This court denied the Bank's motion to dismiss appeal on April 11, 2019.

6

however improbable they may be.  [Citation.]” (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)

We perform an independent review of a ruling on a demurrer and decide de novo whether the challenged pleading states facts sufficient to constitute a cause of action. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)  “In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  ‘We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.’  [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]” (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

On appeal, we will affirm a “trial court’s decision to sustain the demurrer [if it] was correct on any theory.  [Citation.]” (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808, fn. omitted.)  Thus, “we do not review the validity of the trial court’s reasoning but only the propriety of the ruling itself.  [Citations.]” (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757.)

An appellate court reviews the denial of leave to amend after the sustaining of a demurrer under an abuse of discretion standard.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)  When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, it will conclude that the trial court abused its discretion by denying the plaintiff leave to amend.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 39; *Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708, 719.)  “ ‘[W]here the nature of the plaintiff’s

7

claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result.' " (*Buchanan v. Maxfield Enterprises, Inc.* (2005) 130 Cal.App.4th 418, 421.)  The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect.  (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 (*Campbell*).)  "The onus is on the *plaintiff* to articulate the 'specifi[c] ways' to cure the identified defect, and absent such an articulation, a trial or appellate court may grant leave to amend 'only if a potentially effective amendment [is] both apparent and consistent with the plaintiff's theory of the case.'  [Citation.]"  (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1145.)

## B.  Sustaining of Demurrer to Second Amended Complaint Was Proper

### 1.  *Wrongful Foreclosure & Declaratory Relief*

In the proceedings below, Wilkes did not address Chase Bank's contention that the Complaint failed to state facts sufficient to constitute a cause of action for wrongful foreclosure (second cause of action).  Similarly, his opposition below did not respond to the assertion that the fifth cause of action for declaratory relief was demurrable.  Wilkes has thus forfeited the right to challenge on appeal the trial court's order sustaining the demurrer without leave to amend as to these two causes of action.  (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1192 [failure to assert argument below in opposition to demurrer results in its forfeiture on appeal].)

Additionally, Wilkes on appeal fails to present any argument that the trial court erred in sustaining without leave to amend the demurrer to the wrongful foreclosure and declaratory relief causes of action.  By failing to raise the issue either below or an appeal, any argument by Wilkes that the court erred in sustaining the demurrer as to these two claims is twice forfeited.  (*Children's Hosp. and Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 776.)

8

## 2.    *Promissory Estoppel (First Cause of Action)*

### a.    **Background**

A claim for promissory estoppel in California consists of four elements: " '[1] A promise [2] which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and [3] which does induce such action or forbearance . . . [and 4] injustice can be avoided only by enforcement of the promise.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transp. Authority* (2000) 23 Cal.4th 305, 310 ((*Kajima/Ray Wilson*).) The promise must be one that is "clear and unambiguous in its terms." (*Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890 (*Laks*).) " 'Estoppel cannot be established from . . . preliminary discussions and negotiations.' [Citation.]" (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044.) Claims for promissory estoppel are "basically the same as contract actions, but only missing the consideration element." (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 903.) A demurrer to a cause of action for promissory estoppel is properly sustained if the plaintiff fails to adequately allege each of the required elements. (See, e.g., *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1179 (*Daniels*), disapproved on other grounds in *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 948, fn. 12.)

There are two distinct aspects of Wilkes's claim for promissory estoppel. The first aspect involves an alleged oral statement made sometime between late 2009 and 2010 (the alleged 2010 promise).[8] Wilkes alleged that in December 2009 he was unable to make a loan payment at a local branch of Chase Bank and was advised he needed to

---

[8] The date that Bank representative Barcelona allegedly told Wilkes he needed to miss additional loan payments to qualify for a loan modification was not specified in the Complaint. It may be inferred, however, that this date was sometime between December 2009 and whatever date in 2010 that Wilkes submitted his first of three loan modification packages to the Bank. For ease of reference, we refer to this alleged promise as the alleged 2010 promise.

speak to "a [h]ome lending advisor." He later met with Bank representative Barcelona, who told him that his "loan was in default and he would need to miss a couple more payments to qualify for their loan modification program." Wilkes alleges that he relied on Barcelona's representations by "miss[ing] consecutive payments," and he submitted three complete loan modification applications in 2010, which the Bank never reviewed.

The second aspect of the promissory estoppel claim involves a 2011 written stipulation involving Wilkes and Chase Bank (the alleged 2011 promise). Wilkes alleged that under the "Stipulation for Adequate Protection" made in connection with the bankruptcy proceedings, Chase Bank "agreed to consider [Wilkes] for loan modification," and Wilkes agreed to make monthly mortgage payments of $2,970 beginning September 1, 2011. Wilkes alleged that he "believe[d] that his loan would be modified following the $2,970 monthly payments." He alleged further that he made the monthly payments under the Stipulation, but "the promised loan modification was never provided."[9]

Although not attached to the Complaint, the Stipulation to which it refers was the "Order Approving Stipulation for Adequate Protection" (the Order) filed in the bankruptcy court on October 3, 2011, that was included in the Bank's demurer to the Complaint.[10] The court recited in the Order that the stipulation was entered in connection

_____

[9] During oral argument, counsel for Wilkes asserted that the alleged 2011 promise was actually a series of promises made by the Bank between 2011 and 2016 to consider him for a loan modification, upon which Wilkes relied. A review of the allegations of the Complaint do not bear out counsel's assertion.

[10] This Order was among the documents attached to the Bank's request for judicial notice filed below. An appellate court, in reviewing the sustaining of a demurrer without leave to amend, considers, in addition to all material facts properly pleaded, matters for which judicial notice is proper. (*Traders Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 41.) We take judicial notice of the Order pursuant to Evidence Code sections 452, subdivision (d) and 459. (See *Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1395 [request for judicial notice of pleadings in federal forfeiture actions granted].)

with Chase Bank's motion for relief from automatic stay that had been set for a continued hearing on August 29, 2011. In that Order, the United States Bankruptcy Court, Northern District of California, San Jose Division, approved the stipulation of the parties and ordered, inter alia, that (1) Wilkes make "continuing adequate protection payments" of $2,970.00 per month, beginning September 1, 2011, (2) in the event of a default and failure to cure, the Bank would be entitled to lodge an order in which the automatic stay would terminate without further hearing, (3) if Wilkes's request for loan modification were denied, the Bank would be entitled to restore its motion for relief from automatic stay, and (4) the payments made under the Order "[would] not prejudice [the Bank's] rights under its Note and Deed of Trust." Contrary to the allegations of the Complaint, the Order does not reflect that the Bank affirmatively "agreed to consider [Wilkes] for loan modification"

As discussed below, we conclude that the first cause of action for promissory estoppel was demurrable for at least two reasons.

### b.    Clear and Unambiguous Promise

A promissory estoppel claim must be founded on a promise that is "clear and unambiguous in its terms." (*Laks*, *supra*, 60 Cal.App.3d at p. 890.) Wilkes identified in his Complaint that the alleged 2010 promise by Bank representative Barcelona upon which he relied was that that his "loan was in default and he would need to miss a couple more payments to qualify for their loan modification program." It is not apparent that this was a promise to do anything at all. The allegations suggest that the Bank advised Wilkes that he "need[ed] to miss a couple" of additional loan payments to be in a position to proceed with an application for a modification of his loan. The allegations do not support the existence of a promise that is clear and ambiguous that the Bank agreed to take specific action, such as approving a loan modification, suspending any available contractual remedies upon a default, or forgoing foreclosure proceedings, if Wilkes were, in fact, to omit making required loan payments.

11

In *Daniels*, *supra*, 246 Cal.App.4th at page 1178, the plaintiffs alleged a promissory estoppel claim based upon a lender's promise on two occasions to provide a loan modification with lower monthly payments and a reduced interest rate if all required documents were provided, the plaintiffs missed at least three monthly payments, and they " 'made trial plan payments of $1,000.00 per month.' " A panel of this court concluded that the plaintiffs' failure to allege "the essential terms of a new loan agreement, such as the new lower interest rate . . . render[ed] the alleged promises insufficiently clear and unambiguous to support a promissory estoppel. [Citation.]" (*Id.* at p. 1179.) The alleged 2010 promise here is significantly less clear or definitive, and more ambiguous, than the promise this court found insufficient to support a promissory estoppel claim in *Daniels*.[11]

The alleged 2011 promise is likewise problematic. The alleged 2011 promise as stated in the Complaint was that Chase Bank "agreed to consider [Wilkes] for loan modification."[12] Liberally construing the Complaint, Wilkes alleged that in exchange for the alleged promise, he agreed to make monthly mortgage payments of $2,970. As was true with the alleged 2010 promise, the alleged 2011 promise contained no specifics and presented nothing as to what particular action the Bank agreed to take. It is not a "clear

---

[11] The first amended complaint included a fifth cause of action for promissory estoppel, describing the alleged 2010 promise, but not the alleged 2011 promise that was added in the (Second Amended) Complaint. The allegations concerning the alleged 2010 promise in the two pleadings are virtually identical. The court below sustained the Bank's demurrer to the promissory estoppel claim in the first amended complaint because, inter alia, Wilkes failed to allege a clear and unambiguous promise.

[12] Although not the basis for our conclusion that sustaining the demurrer to the promissory estoppel claim was appropriate because the alleged 2011 promise was not clear and unambiguous, we note that Wilkes's allegation that in the Stipulation, Chase "agreed to consider [him] for loan modification" does not appear to be supported by the actual document, the Order. Rather, the order provided that in the event the Bank denied a loan modification, it could restore its motion for relief from the automatic stay.

12

and unambiguous [promise] to support a promissory estoppel.  [Citation.]" (*Daniels*, *supra*, 246 Cal.App.4th at p. 1179.)[13]

The demurrer to the first cause of action was properly sustained because of the failure to plead a clear and unmistakable promise.[14]

### c.        Statute of Limitations

Chase Bank asserts—as it did below—that the cause of action for promissory estoppel was subject to demurrer because it appeared on the face of the Complaint that the claim was time-barred, and Wilkes did not allege facts sufficient to show delayed accrual of the statute of limitations.[15]  Wilkes argues in his appellate briefs that he adequately pleaded the delayed discovery rule by alleging that he did not discover until 2016 that the Bank would not provide a loan modification to him.

---

[13] We are aware that the California Supreme Court decided a case last month that concerned a lender's duty to a borrower relative to loan modification applications.  (See *Sheen v. Wells Fargo Bank, N.A.*, *supra*, 12 Cal.5th 905.)  In *Sheen*, the Court held "that when a borrower requests a loan modification, a lender owes no tort duty sounding in general negligence principles to 'process, review and respond carefully and completely to' the borrower's application." (*Id.* at p. 948.)  Wilkes did not allege a claim for negligence here.  Further, although the high court in *Sheen* acknowledged as a general proposition that a borrower may in an appropriate case allege a claim for promissory estoppel in the context of a promised loan modification (see *id.* at pp. 943-944), nothing in the Court's opinion in *Sheen* impacts our conclusion here that the trial court did not err in sustaining the Bank's demurrer to the Complaint.

[14] One of the elements of promissory estoppel is that " 'the promisor [Chase Bank] should reasonably expect to induce action or forbearance on the part of the promisee [Wilkes].' " (*Kajima/Ray Wilson*, *supra*, 23 Cal.4th at p. 310.)  Because Wilkes did not adequately plead the *existence* of a clear and unambiguous promise, it naturally follows that he did not adequately plead the second element of promissory estoppel, i.e., that the Bank should have reasonably expected the alleged promise to have induced Wilkes to act in a certain manner.

[15] Our discussion here concerning the statute of limitations assumes that the alleged promises were sufficient to support a claim for promissory estoppel.  For the reasons stated, *ante*, we have concluded that Wilkes failed to allege a clear and unmistakable promise to support a promissory estoppel claim.

13

"The limitations period commences when the cause of action accrues. [Citations.]" (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1317.) Accrual of a claim occurs " ' "when [the claim] is complete with all of its elements"—those elements being wrongdoing [or breach], harm, and causation.' " (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*); accord, *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815.) An exception to the general rule of accrual is the delayed discovery rule, "which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo–Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*).)

"When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper. [Citations.]" (*Hightower v. Roman Catholic Bishop of Sacramento* (2006) 142 Cal.App.4th 759, 765.) Where a claim alleged in a complaint appears on its face to be barred by the applicable statute of limitations, a plaintiff relying on the theory of delayed accrual must plead facts supporting that theory. As the Supreme Court has explained, "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' [Citation.]" (*Fox*, *supra*, 35 Cal.4th at p. 808; see also *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1472 (*Cansino*) ["[t]he discovery-related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner"].) The application of the statute of limitations based on facts alleged in a complaint is a legal question that is subject to de novo review. (*Aryeh*, *supra*, 55 Cal.4th at p. 1191.)

### (1)    Alleged 2010 Promise[16]

"The statute of limitations for promissory estoppel based on oral promises is two years.  (§ 339, subd. 1.)"  (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1223-1224, fn. omitted.)  The alleged 2010 promise was oral; it was thus subject to a two-year statute of limitations.  (*Ibid.*)

Based upon the allegations of the Complaint, the promissory estoppel claim founded on the alleged 2010 promise was time-barred.  Sometime after Bank representative Barcelona advised Wilkes that "he would need to miss a couple more payments to qualify for [the Bank's] loan modification program," Wilkes made three loan modification applications in 2010.  He alleged that Chase Bank advised him "they had not received a complete package."  While a precise date of breach of the alleged 2010 promise cannot be determined from the Complaint, it would be appropriate to conclude that such breach—the Bank's failure to act on the modification requests—would be within one or two months after the third application was submitted in 2010.  Although Wilkes did not plead the dates he submitted his applications, assuming that the third was submitted at the end of 2010, the Bank's breach would have been no later than February 28, 2011.  Using that date as the date of accrual, Wilkes would have been required to file the promissory estoppel action founded on the oral alleged 2010 promise by February 27, 2013.  The action, filed March 21, 2017, was untimely by more than four years.

The principal allegations in the Complaint concerning delayed accrual were that Wilkes "was not aware that Defendant's statements were false until his bankruptcy was dismissed in 2016 and his loan modification was still pending status despite the Stipulation agreement with CHASE.  Accordingly, any applicable statute of limitations

---

[16] At oral argument, counsel for Wilkes conceded that there were "statute of limitations problems" with respect to the claims in the Complaint related to the alleged 2010 promise.

should be tolled." He also alleged that "[f]rom November 2010 until November 2016, Defendant CHASE and its employees strung [him] along with promises of a loan modification qualification," during which period he complied with all of the Bank's instructions and submitted all items requested. Wilkes failed to allege specific facts supporting delayed discovery to support postponing the accrual of the statute of limitations regarding the alleged 2010 promise. (See *Cansino*, *supra*, 224 Cal.App.4th at p. 1472 ["[t]he discovery-related facts should be pleaded in detail"].) He failed to meet his "burden . . . to 'show diligence'; [his] 'conclusory allegations [were insufficient to] withstand demurrer.' [Citation.]" (*Fox*, *supra*, 35 Cal.4th at p. 808; see also *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 193 [whether the plaintiff's allegation of inability to reasonably discover facts to support a claim of delayed accrual under the discovery rule is properly decided on demurrer where the "allegations in the complaint and facts properly subject to judicial notice . . . can support only one reasonable conclusion"].)[17]

### *(2)    Alleged 2011 Promise*

A promissory estoppel claim based upon a written promise is governed by a four-year statute of limitations. (§ 337, subd. (a)); *Perez v. CitiMortgage, Inc.* (C.D. Cal., June 10, 2014, No. SACV 14-00355-DOC) 2014 WL 2609656 [p. *3].)[18] According to the allegations of the Complaint, the alleged 2011 promise under which Chase "agreed to consider [Wilkes] for loan modification" was based upon a "Stipulation for Adequate Protection" that Wilkes and the Bank "entered" in connection with his Chapter 13

---

[17] The court below sustained with leave to amend the demurrer to the first amended complaint on the ground that the promissory estoppel claim on its face was time-barred, and that Wilkes failed to allege facts, including his due diligence, to support a theory of delayed discovery.

[18] California appellate courts may cite unreported federal court decisions as persuasive authority. (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 744, fn. 3.)

bankruptcy proceeding. Although that Stipulation was not attached to the Complaint, it is clear from the pleading—as confirmed by the Order of which we have taken judicial notice—that the alleged 2011 promise was written. Thus, any promissory estoppel claim based upon that alleged promise is governed by a four-year statute of limitations. (§ 337, subd. (a).)

A review of the allegations of the Complaint show that the promissory estoppel claim based upon the alleged 2011 promise was also barred by the applicable statute of limitations. Wilkes alleged that pursuant to the Stipulation in the bankruptcy proceeding, Chase Bank "agreed to consider [Wilkes] for loan modification," and Wilkes agreed to make monthly mortgage payments of $2,970 beginning September 1, 2011. He alleged that he "believe[ed] that his loan would be modified following the $2,970 monthly payments," that he made the payments, but "the promised loan modification was never provided." Using October 3, 2011, the date the Order pursuant to the Stipulation was filed, as the date of the alleged promise, the date of accrual for the promissory estoppel claim would be the date of alleged breach by the Bank through its failure to consider Wilkes for a loan modification. Although this date, from the nonspecific allegations of the Complaint, cannot be pinpointed, the breach would be shortly after Wilkes began making the agreed monthly payments and the Bank failed to fulfill its promise in exchange to consider Wilkes for a loan modification. Since Wilkes began making payments under the Stipulation in September 2011, the Bank's breach would have occurred no later than early 2012. Thus, the four-year statute of limitations under section 337, subdivision (a) would have run by early 2016, more than 15 months before Wilkes initiated this action.

The allegations concerning delayed accrual with respect to the alleged 2011 promise—which are the same as those related to the alleged 2010 promise, namely that Wilkes "was not aware that Defendant's statements were false until his bankruptcy was dismissed in 2016 and his loan modification was still pending status despite the

17

Stipulation agreement with CHASE"—are likewise insufficient. Aside from these allegations themselves failing to show diligence, they must be considered with other allegations and matters of which judicial notice may be taken, including but not limited to (1) Wilkes's claim that Chase repeatedly denied having received payments he made under the Stipulation; (2) the absence of allegations in the Complaint as to specific follow-up inquiries he made to determine whether the Bank was, in fact, considering his circumstances for a loan modification; and (3) the absence of a specific provision in the Order that the Bank committed to considering a loan modification application if Wilkes made the monthly adequate protection payments specified in the Order. (See *Cansino*, *supra*, 224 Cal.App.4th at p. 1472 ["[t]he discovery-related facts should be pleaded in detail"].) Wilkes failed to meet his burden of showing diligence to support a theory of delayed accrual of the statute of limitations regarding the 2009-2010 alleged promise. (*Fox*, *supra*, 35 Cal.4th at p. 808.)

The promissory estoppel claim, as to both the alleged 2010 promise and the alleged 2011 promise, was subject to demurrer because on its face it was time-barred.

### 3. Breach of Implied Covenant (Third Cause of Action)

#### a. Background

" 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' [Citation.]" (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683.) The covenant of good faith and fair dealing "is based on general contract law and the long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36.) It is "implied by law in every contract, [and it] exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. [Citation.] The covenant thus cannot ' " be endowed with an existence independent of its contractual underpinnings." ' [Citations.] It cannot impose substantive duties or limits on the

18

contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 349-350 (*Guz*), original italics.) As one court has explained, "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation. [Citation.] 'The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.' [Citation.] 'In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031-1032, original italics (*Racine & Laramie*).)

A plaintiff asserting a claim for breach of the implied covenant must plead and prove "(1) the parties entered into a contract; (2) the plaintiff fulfilled his [or her] obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct. [Citation.]" (*Rosenfeld v. JPMorgan Chase Bank, N.A.* (N.D. Cal. 2010) 732 F.Supp.2d 952, 968 (*Rosenfeld*), citing CACI No. 325.)

### b. Failure to Adequately Plead Implied Covenant Claim

In the third cause of action, Wilkes alleged that there is an implied "covenant . . . included within any loan agreement between a lender and a borrower," and that although his "loan was void ab initio," there were "implied obligations to act in good faith toward [Wilkes] in carrying out the purpose and intent of the contractual agreement, including the enforcement of the agreements." (Original underscoring.) He alleged that although he followed the Bank's advice by missing payments to qualify for a loan modification, and he later made monthly payments of $2,790 pursuant to the Stipulation entered in the

19

bankruptcy proceedings, Chase Bank never reviewed him for a loan modification pre-bankruptcy, and it never gave him a loan modification during the time he was in bankruptcy.[19]

Although it is not expressly stated in the Complaint, the contract upon which the covenant of good faith and fair dealing rests in this instance is the "loan agreement," i.e., the note and deed of trust. Neither document was attached to the Complaint. But the Bank attached a copy of the deed of trust to its request for judicial notice in support of its demurer to the Complaint.[20] The deed of trust contains no language obligating the lender to modify, or consider any request of the borrower to modify, the terms of the loan. It includes, however, a provision that any action taken by the lender to extend time for payment or modify amortization of the sums owed does not operate as a release of liability to the borrower or his successor. Because the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement" (*Guz*, *supra*, 24 Cal.4th at pp. 349-350), here, Wilkes cannot allege a breach of the implied covenant where the express agreement (i.e., the deed of trust) contains no obligation to modify or to negotiate a modification of the loan terms. (See *Racine & Laramie, supra*, 11 Cal.App.4th at pp. 1031-1032 [breach of implied covenant claim founded on alleged lack of good faith in negotiating new terms of

---

[19] In the first amended complaint, Wilkes alleged a claim for breach of implied covenant that was based upon similar allegations that the Bank's failed to review him for loan modification and ultimately commenced foreclosure proceedings. The court below sustained with leave to amend the demurrer to that claim in the first amended complaint on the grounds that (1) Wilkes had failed to allege an oral contract or promise by the Bank to provide him with a loan modification, and (2) the claim was time-barred.

[20] We take judicial notice of that deed of trust instrument. (See Evid. Code, §§ 452, subd. (d), 459, subd. (a); see *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106. 1117.) Although the court below did not rule on the judicial notice request in connection with the demurrer to the (Second Amended) Complaint, the court granted the Bank's request for judicial notice for the demurrer to the first amended complaint as to a number of documents, including the deed of trust.

20

concession contract; defendant had no express obligation under existing contract to negotiate such new contract].)

In *Griffin v. Green Tree Servicing, LLC* (C.D. Cal. 2015) 166 F.Supp.3d 1030, 1047-1048 (*Griffin*), the plaintiff alleged a claim of breach of implied covenant based upon the defendants having "lure[d] her into default . . . [having] fail[ed] to honor [a] purported oral loan modification agreement, . . . [and having failed to honor their] 'renew[ed] . . . promise to explore options to avoid foreclosure.' " The district court held that the plaintiff had failed to state a breach of implied covenant claim, holding that the plaintiff "does not allege whether the contract giving rise to the implied duties is the mortgage, deed of trust, the purported oral modification agreement, or some other contract. While she alleges that [the] defendants took various actions that breached the covenant of good faith and fair dealing, she has not identified any rights she had under the original mortgage loan and note, the deed of trust, or the purported oral loan modification agreement that were frustrated by defendants' alleged breach of the covenant." (*Id.* at p. 1048.)

Likewise, as in *Griffin*, we conclude that Wilkes failed to allege the specific contract out of which the claimed implied duties arose, did not identify the contractual provision under which there arose an implied duty for the Bank to consider modification of his loan, or how his specific contractual rights were frustrated by the Bank's actions. The trial court did not err in sustaining the demurrer to the breach of implied covenant claim of the Complaint.

### c.    Statute of Limitations

Chase Bank also contends that the breach of implied covenant claim was barred by the applicable statute of limitations. Since the breach of implied covenant claim here was founded upon a written contract, the four-year statute of limitations under section 337, subdivision (a), applies. (*Ladd v. Warner Bros. Entertainment, Inc.* (2010) 184

Cal.App.4th 1298, 1309.) Our reasoning stated above in connection with our finding that the claim for promissory estoppel was time-barred is equally appropriate here.

The breach of the Bank's alleged 2010 promise to consider Wilkes for a loan modification once he missed two additional payments occurred no later than February 28, 2011. The breach of the Bank's alleged 2011 promise, occurring after Wilkes filed for bankruptcy protection, occurred by early 2012. Accordingly, using this later date as the date of accrual of the breach of implied covenant claim, the four-year statute of limitations under section 337, subdivision (a) would have run by early 2016, more than 15 months before Wilkes initiated this action.

As was the case with his promissory estoppel claim, the allegations of Wilkes in the Complaint supporting delayed accrual of the breach of implied covenant claim are insufficient. Indeed, the principal allegations concerning delayed accrual are identical. These allegations are conclusory, and Wilkes did not meet his "burden . . . to 'show diligence.' " (*Fox*, *supra*, 35 Cal.4th at p. 808.)

The trial court properly sustained the demurrer of the Bank to the third cause of action of the Complaint for breach of implied covenant.[21]

### 4. *Unfair Competition (Fourth Cause of Action)*

#### a. **Background**

The UCL (Unfair Competition Law) "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts." (*Korea Supply Co. v. Lockheed Martin*

---

[21] Chase Bank also contends that the demurrer to the breach of implied covenant claim was properly sustained because the record demonstrates that Wilkes had defaulted on the loan. Thus, the Bank argues, Wilkes cannot satisfy one of the elements of the claim, namely, that "the plaintiff fulfilled his [or her] obligations under contract." (*Rosenfeld*, *supra*, 732 F.Supp.2d at p. 968.) While this argument has facial appeal, we do not address it here since we have concluded the demurrer was properly sustained on at least two other grounds. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 (*Benach*) [appellate court need not address issues whose resolution is unnecessary to the disposition of the appeal].)

*Corp.* (2003) 29 Cal.4th 1134, 1143 (*Korea Supply*).) A claim under the UCL involves a " 'borrow[ing of]' violations from other laws by making them independently actionable as unfair competitive practices." (*Ibid.*) A plaintiff must show he or she has suffered actual injury in order to pursue a UCL action. (Bus. & Prof. Code, § 17204.) "A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition." (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1590.) "Prevailing plaintiffs are generally limited to injunctive relief and restitution. [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179 (*Cel-Tech*).)

A private plaintiff asserting a claim under the UCL must plead facts sufficient to establish the defendant committed acts that constituted an unlawful, unfair, or fraudulent business practice, and facts showing that the plaintiff has standing to bring the UCL action. (*Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1253.) A UCL plaintiff "must state with reasonable particularity the facts supporting the statutory elements of the violation. [Citations.]" (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619 (*Khoury*); see also *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 857.)

### b. Failure to Adequately Plead UCL Claim

Wilkes alleged in the fourth cause of action for violation of the UCL that the actions of Defendants were "unlawful, unfair and/or fraudulent business practices" under the UCL. Wilkes identified that the Bank's actions of "advising [him] to stop making payments on the loan to qualify for a loan modification when in fact CHASE never reviewed Plaintiff" and "refusing [his] payments pursuant to the Stipulation" were "unlawful and deceptive business practices." He alleged further that the Bank "is in the routine business practice of servicing loans where they [*sic*] know that their [*sic*] authorized representatives are misleading borrowers/clients regarding terms of such loans and the reinstatement of said loans."

23

An unlawful business practice under the UCL is " ' " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' " (*Cel-Tech*, *supra*, 20 Cal.4th at p. 180.) "Under its 'unlawful" prong,' 'the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.' [Citation.] Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1554.)

Here, Wilkes did not allege facts related to the unlawful prong of the UCL, i.e., facts supporting a violation of another law (i.e., statute). And as we have discussed, *ante*, Wilkes did not allege facts supporting the common law claims incorporated into the UCL claim, namely, claims for promissory estoppel and breach of implied covenant. Further, his conclusory allegation that the Bank had a "routine business practice of servicing loans" in which it knowingly had its representatives mislead borrowers concerning the terms of their loans does not cure the pleading deficiency. (*Khoury*, *supra*, 14 Cal.App.4th at p. 619 [plaintiff must plead facts supporting UCL claim "with reasonable particularity"].) The Complaint failed to state a cause of action for violation of the UCL under the unlawful prong.

A fraudulent business practice under the UCL is one in which " ' " 'members of the public are likely to be deceived.' " ' " (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312.) Again, Wilkes did not allege facts "with reasonable particularity" supporting a claim that Chase bank engaged in a fraudulent business practice involving the likelihood of public deception. (*Khoury*, *supra*, 14 Cal.App.4th at p. 619.)

Since a UCL claim involves a " 'borrow[ing of]' violations from other laws by making them independently actionable" (*Korea Supply*, *supra*, 29 Cal.4th at p. 1143), Wilkes similarly did not allege a claim that the Bank engaged in an unfair business practice. He did not allege "with reasonable particularity the facts supporting" a violation of the law. (*Khoury*, *supra*, 14 Cal.App.4th at p. 619.)

### c.       Statute of Limitations

"The statute of limitations for a UCL violation is four years.  (Bus. & Prof. Code, § 17208.)"  (*Cansino*, *supra*, 224 Cal.App.4th at p. 1475.)  Our discussion concerning the accrual of the statute of limitations for the breach of implied covenant claim, *ante*, applies equally to Wilkes's UCL claim.  The date of breach relating to the Bank's alleged 2010 promise was on or about February 28, 2011, and the date of breach relative to the alleged 2011 promise was in early 2012.  Accordingly, the four-year statute of limitations for a UCL claim would have run at the latest by early 2016, more than 15 months before Wilkes initiated this action.

Wilkes did not allege any facts within the violation of UCL cause of action in support of a delayed discovery theory.  He did allege, however—through incorporation by reference of all allegations of the Complaint—the delayed discovery allegations contained in the promissory estoppel and breach of implied covenant causes of action.  As we have concluded, *ante*, with respect to the first and third causes of action, these allegations are conclusory, and Wilkes did not meet his "burden . . . to 'show diligence.' "  (*Fox*, *supra*, 35 Cal.4th at p. 808; see *Cansino*, *supra*, 224 Cal.App.4th at p. 1475 [complaint was subject to demurrer because UCL plaintiffs had failed to plead sufficient facts to invoke delayed discovery rule].)

The demurrer to the claim for violation of the UCL was properly sustained because Wilkes failed to plead facts sufficient to support the claim and because, on its face, it was time-barred.[22]

---

[22] Chase Bank contends that the demurrer to the UCL claim was properly sustained for additional reasons, including that Wilkes lacked standing to assert a UCL claim.  We need not address these additional arguments here since we have concluded the demurrer was properly sustained on at least two other grounds.  (See *Benach*, *supra*, 149 Cal.App.4th at p. 845, fn. 5.)

### 5.     *Denial of Leave to Amend*

We address the propriety of the court's order insofar as it concluded, after sustaining the demurrer to each cause of action of the Complaint, that denial of leave to amend was appropriate.

We first note that the prior, superseded first amended complaint of Wilkes also included claims for promissory estoppel, breach of implied covenant, and violation of the UCL.  The allegations in the first amended complaint, at least insofar as they concerned the alleged 2010 promise, were largely identical to the allegations in the (Second Amended) Complaint.  The trial court sustained the Bank's demurrer to these three causes of action of the first amended complaint on grounds that included many which are common to those upon which we conclude here that the (Second Amended) Complaint was defective.

There is nothing in the record to disclose in what manner Wilkes might have been able to allege additional facts to maintain a viable cause of action for promissory estoppel, breach of the implied covenant, or violation of the UCL.  Indeed, his opposition to demurrer filed below presented no discussion concerning additional facts that Wilkes could allege to cure the defects in the Complaint.

Moreover, Wilkes in his appellate briefs provides only a very cursory discussion concerning amendment of the Complaint.  Wilkes makes the conclusory argument in his opening brief that if "the [Complaint] is unclear on what the implied covenant promised, Wilkes asks leave to amend his pleading on appeal to provide the details."  In his reply brief, Wilkes argues, in connection with whether the Complaint alleged sufficient facts supporting a delayed discovery theory, that "Wilkes pleaded the elements of delayed discovery.  If the Court believes he has not, he asks leave to amend his pleading on appeal to supply all necessary details."  The argument by Wilkes is completely devoid of any discussion concerning the specifics of any proposed amendment that would cure the pleading defects, and he presents no argument as to the basis for claiming that the trial

26

court abused its discretion in denying leave to amend. (See *Schifando*, *supra*, 31 Cal.4th at p. 1081.) Any contention by Wilkes that the trial court abused its discretion in denying leave to amend is abandoned. (*Nisei Farmers League v. Labor & Workforce Development Agency* (2019) 30 Cal.App.5th 997, 1018 [arguments in briefs raised in perfunctory fashion will be deemed by the appellate court to be abandoned].)

Wilkes, as the appellant, bears the burden of showing that he could have amended the (Second Amended) Complaint to cure the defects rendering it subject to demurrer. (*Campbell*, *supra*, 35 Cal.4th at p. 320.) He failed to meet that burden. Accordingly, we find that the trial court did not abuse its discretion in denying leave to amend. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.)

## III. DISPOSITION

The judgment of dismissal of August 27, 2018, is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
DANNER, J.

*Wilkes v. JPMorgan Chase Bank, N.A. et al.*
**H046397**

28